# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANU KENNEDY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 13-CV-1384 (RLW) |
| | : |
| VINCENT C. GRAY, *et al.,* | : |
| | : |
| Defendants. | : |
| _____ | : |

## PARTIAL MOTION TO DISMISS

Defendants, Mayor Vincent C. Gray, Fire and Emergency Medical Services ("FEMS") Chief Kenneth B. Ellerbe, District of Columbia Fire and Emergency Medical Services, Attorney General Irvin B. Nathan, and the District of Columbia, by and through their undersigned counsel, respectfully request that this Honorable Court:

1. Dismiss Mayor Gray, Chief Ellerbe, and Attorney General Nathan as Plaintiff has failed to state any claim against these Defendants;

2. Dismiss FEMS as *non sui juris*;

3. Dismiss Plaintiff's purported claims under the Americans with Disabilities Act Amendments Act ("ADAAA") set forth in Counts 5, 8, 12, 16 and 27 because (1) the ADAAA merely amended the Americans with Disabilities Act ("ADA") and did not create new causes of action; and (2) even if the ADAAA did create any cause of action independent of the ADA, Plaintiff cannot state a claim under the ADAAA because his claims arose prior to the effective date of the ADAAA and the ADAAA does not have retroactive effect;

4. Dismiss all of Plaintiff's claims under the ADA, ADAAA, the District of Columbia Human Rights Act ("DCHRA"), the Rehabilitation Act, and 42 U.S.C. § 1983 that rest upon a claimed "disability" (Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 22, 23 and 24) as Plaintiff has not pled any plausible facts that demonstrate, as a matter, of law, a "disability" that substantially limits any major life activity;

5. Dismiss Plaintiff's claims asserted pursuant to 42 U.S.C. § 1983 (Counts 2, 6, 9, 13, 17 and 20) as barred by the applicable statute of limitations;

6. Dismiss Plaintiff's claim asserted pursuant to 42 U.S.C. § 1981 (Count 3) as barred by the applicable statute of limitations;

7. Alternatively, dismiss Plaintiff's § 1983 claims based on alleged Title VII violations (Counts 2 and 20) as § 1983 may not be used to redress alleged violations of rights conferred by Title VII;

8. Alternatively, dismiss Plaintiff's § 1981 claim (Count 3) for failure to plead a cognizable claim for relief pursuant to 42 U.S.C. § 1981; and

9. Dismiss Plaintiff's request for declaratory and injunctive relief for lack of jurisdiction.

Because this motion is dispositive in nature, LCvR 7(m) is inapplicable.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Jonathan H. Pittman
JONATHAN H. PITTMAN [430388]
Section Chief
Civil Litigation Division, Section III

/s/ Shana L. Frost

SHANA L. FROST [458021]
Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax: 741-8934
shana.frost@dc.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MANU KENNEDY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 13-CV-1384 (RLW)** |
| | : | |
| **VINCENT C. GRAY,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendants, Mayor Vincent C. Gray, Fire and Emergency Medical Services Chief Kenneth B. Ellerbe, District of Columbia Fire and Emergency Medical Services ("FEMS"), Attorney General Irvin B. Nathan, and the District of Columbia ("District"), by and through their undersigned counsel, respectfully request that this Honorable Court:

1. Dismiss Mayor Gray, Chief Ellerbe, and Attorney General Nathan as Plaintiff has failed to state any claim against these Defendants;

2. Dismiss FEMS as *non sui juris*;

3. Dismiss Plaintiff's purported claims under the Americans with Disabilities Act Amendments Act ("ADAAA") set forth in Counts 5, 8, 12, 16 and 27 because (1) the ADAAA merely amended the Americans with Disabilities Act ("ADA") and did not create new causes of action; and (2) even if the ADAAA did create any cause of action independent of the ADA, Plaintiff cannot state a claim under the ADAAA because his claims arose prior to the effective date of the ADAAA and the ADAAA does not have retroactive effect;

4. Dismiss all of Plaintiff's claims under the ADA, ADAAA, the District of Columbia
   Human Rights Act ("DCHRA"), the Rehabilitation Act, and 42 U.S.C. § 1983 that
   rest upon a claimed "disability" (Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 22, 23 and
   24) as Plaintiff has not pled any plausible facts that demonstrate, as a matter, of law, a
   "disability" that substantially limits any major life activity;

5. Dismiss Plaintiff's claims asserted pursuant to 42 U.S.C. § 1983 (Counts 2, 6, 9, 13,
   17 and 20) as barred by the applicable statute of limitations;

6. Dismiss Plaintiff's claim asserted pursuant to 42 U.S.C. § 1981 (Count 3) as barred
   by the applicable statute of limitations;

7. Alternatively, dismiss Plaintiff's § 1983 claims based on alleged Title VII violations
   (Counts 2 and 20) as § 1983 may not be used to redress alleged violations of rights
   conferred by Title VII;

8. Alternatively, dismiss Plaintiff's § 1981 claim for failure to plead a cognizable claim
   for relief pursuant to 42 U.S.C. § 1981; and

9. Dismiss Plaintiff's request for declaratory and injunctive relief for lack of
   jurisdiction.

## I.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff joined FEMS on September 9, 2002 as a firefighter.  Compl. ¶¶ 2, 4.  In 2005,
FEMS implemented a facial hair policy that required firefighters and emergency medical
technicians to be clean-shaven in order to ensure that the department-issued emergency
respiratory equipment could form a sufficient seal with the wearer's face.  *Id.* ¶ 2.  For years
Plaintiff complied with the policy without incident; however, on May 29, 2008, on a visit to the
Police and Fire Clinic ("PFC") for an unrelated issue, Plaintiff advised his physician that he had

a skin infection on his face would not heal if he continued to shave closely.  Compl. ¶¶ 106-107. The doctors at PFC advised Plaintiff that they could not issue shaving waivers, and the following day Plaintiff returned to the PFC with a letter from his physician advising him to avoid shaving. *Id.* ¶¶ 109-111.  Plaintiff was thereafter placed on limited duty and advised to consult with a dermatologist.  *Id.* ¶¶ 112-113.

On June 26, 2008, Plaintiff was diagnosed by a dermatologist with *pseudofolliculitus barbae* ("PFB"), a skin condition where irritation occurs from shaving closely, and was advised to maintain 1/8" of facial hair when shaving.  Compl. ¶¶ 114-117.  Plaintiff claims that on July 2, 2008, he submitted documentation to the PFC and to Battalion Fire Chief ("BFC") Begley regarding his PFB; Plaintiff contends that BFC Begley determined that Plaintiff did not have PFB and ordered Plaintiff returned to full duty status.  *Id.* ¶¶ 118-121.  Plaintiff requested sick leave from PFC, which was denied, and he then reported to work at Engine 9 non-compliant with FEMS' facial hair policy.  *Id.* ¶¶ 124-127.  On July 10, 2008, Plaintiff submitted to FEMS a special report regarding his inability to shave and advised his superiors that he believed he was being discriminated against and that FEMS should accommodate his PFB.  *Id.* ¶¶ 129-131.

Notwithstanding his lack of compliance with the policy, Plaintiff contends that he continued to work without incident until July 25, 2008 when BFC Saunders placed Plaintiff on administrative leave and advised Plaintiff that a hearing had been scheduled for August 14, 2008 regarding proposed suspension for Plaintiff's failure to adhere to FEMS' facial hair policy.  *Id.*¶¶ 133-138.  Plaintiff learned that BFC Faust had proposed two 72-hour suspensions for Plaintiff's non-compliance with the policy on July 10 and July 28, 2008.  *Id.* ¶¶ 144-146.  Plaintiff claims the discipline actually imposed was a 12-hour suspension for non-compliance on July 10, 2008, and a 24-hour suspension for non-compliance on July 28, 2008.  *Id.* ¶¶ 145-146.  Those charges

3

were upheld at October 1, 2008 BFC Conference, and again subsequently by Assistant Fire Chief Brian Lee. *Id.* ¶¶ 153-154; 166-167.

Plaintiff alleges that on July 31, 2008 he filed a charge of discrimination with the EEOC asserting claims of discrimination on the basis of race and disability. Compl. ¶¶ 7-8. Subsequently, after Chief Lee upheld Plaintiff's suspension, Plaintiff was advised that a trial board was scheduled regarding Plaintiff's non-compliance with FEMS' facial hair policy. *Id.* ¶ 169. On December 2, 2008, Plaintiff amended his EEO charge to claim additional acts on the basis of retaliation. *Id.* ¶ 9.[1] In the meantime, from October, 2008 through February, 2009 Plaintiff was out on sick leave for depression, stress and adjustment disorder. *Id.* ¶ 165.

In approximately January/February, 2009 Plaintiff returned to work on limited duty, due to his depression and adjustment disorder diagnosis, and was assigned to the training academy to renew his credentials. Compl. ¶¶ 172-176. He states that he again requested an accommodation for his PFB on March 17, 2009, and that on March 17 and March 20, 2009, PFC doctors recommended that Plaintiff be maintained on limited duty. *Id.* ¶¶ 177-181. On March 23, 2009, FEMS advised Plaintiff that he was being subjected to the involuntary retirement process. *Id.* ¶ 182. He had a disability interview with FEMS on August 13, 2009, and on September 10, 2009 the PFC recommended that Plaintiff be considered for disability retirement. *Id.* ¶¶ 188; 191. On April 8, 2010, FEMS notified Plaintiff that he had been referred for disability retirement consideration. *Id.* ¶ 198.

Notwithstanding the retirement process, Plaintiff again requested on October 8, 2009 that he be permitted to maintain 1/8" facial hair. Compl. ¶ 192. Also notwithstanding the retirement process, on March 1, 2010 and April 9, 2010, Lt. Marie Rosich told Plaintiff he was required to

[1] Plaintiff avers that he filed amendments to his EEO charge to include new actions FEMS allegedly took against him on May 11, 15, and 20, 2009, September 16, 2009, and October 27, 2009. Compl. ¶¶11-15.

4

take the National Registry of Emergency Medical Technicians ("NREMT") exam, which was required for D.C. Department of Health certification.  *Id.* ¶¶ 195-199.  When Plaintiff declined to take the exam, claiming he was medically exempt and in the process of involuntary retirement, he was charged with insubordination.  *Id.* ¶¶ 197; 199-201.  The insubordination charge was endorsed by BFC John Brown, and also by Deputy Fire Chief Lawrence Anderson.  *Id.* ¶ 229.

On May 19, 2010, BFC Begley ordered Plaintiff to report to PFC for a psychological exam scheduled the following day at 3:15 pm.  Compl. ¶ 208.  Plaintiff requested that the exam be postponed until May 21, stating that he required time to consult with his lawyer.  *Id.* ¶ 210-211.  The request was denied, and Plaintiff's May 20, 2010 appointment time was moved up from 3:15 pm to 8:00 am.  *Id.* ¶¶ 212-213.  Plaintiff reported to PFC on May 20, 2010 but declined to participate in the exam, claiming it was discriminatory and retaliatory.  *Id.* ¶¶ 214-216.  As a result, BFC Begley ordered Plaintiff to submit a special report explaining why he refused to participate in the psychological exam.  *Id.* ¶ 217.  Plaintiff was also placed on sick leave until he completed the psychological exam.  *Id.* ¶ 222.  Another psychological exam was scheduled for May 27, 2010; as a result, and in response to several requests from Plaintiff, Plaintiff's retirement hearing was rescheduled for July 22, 2010.  *Id.* ¶¶ 223-225.  Plaintiff was returned to full duty on June 11, 2010, but advised that he was not permitted to work in the field while he maintained his facial hair.  *Id.* ¶¶ 226-228.  Because he was returned to full duty, Plaintiff was no longer eligible for disability retirement.  *Id.* ¶ 239.

On June 29, 2010 Plaintiff was charged with insubordination for failure to take the NREMT exam (with a recommended penalty of an 80-hour suspension) and for failure to take the psychological exam (with a recommended penalty of 120-hour suspension).  *Id.* ¶¶ 230-234.  On July 2, 2010, Plaintiff again amended his EEO charge to include new acts taken by FEMS.

5

*Id.* ¶ 16.   After a BFC conference on these charges on July 7, 2010, Plaintiff was advised to submit additional documentation to PFC regarding Plaintiff's medical condition and his ability to test.  *Id.* ¶¶ 236-238.[2]   On July 20, 2010, BFC Begley ordered Plaintiff to report to PFC; Plaintiff claims that PFC placed him on sick leave for an unspecified illness until Plaintiff was able to provide documentation from his psychiatrist that he could return to full duty.  *Id.* ¶¶ 240-243.  As a result, Plaintiff was forced to use 69 hours of accrued sick leave and 11 hours of accrued annual leave, which FEMS declined to restore.  *Id.* ¶¶ 244-246.  On July 22, 2010, Plaintiff again amended his EEO charge to include new actions FEMS allegedly took against him.  *Id.* ¶ 17.

On August 30, 2010 Plaintiff reported to the FEMS training academy for firefighter refresher training where he was ordered to submit a special report as to why he was not clean-shaven.  *Id.* ¶¶ 247-250.  Plaintiff attended and completed the firefighter refresher training with 1/8" facial hair.  *Id.* ¶ 252.  Plaintiff attempted to be fit tested on September 24, 2010, but was told he could not be tested because his facial hair was not due to a religious exemption.  *Id.* ¶¶ 253-256.[3]   Plaintiff acknowledged to his superiors that he had been requesting an accommodation for his claimed medical condition since July, 2008.  *Id.* ¶ 256.

On September 28, 2010, Plaintiff reported to the fire prevention division on ful duty status; while there, he was required to submit special reports regarding his failure to shave on

---

[2] The insubordination charges were subsequently upheld on November 17, 2010; the proposed 120-hour suspension was reduced to 60 hours, and the proposed 80-hour suspension was reduced to 12 hours.  Compl. ¶¶ 270-72. Plaintiff appealed this decision.  *Id.* ¶ 277.

[3] In the litigation of *Calvert Potter, et al. v. District of Columbia*, C.A. No. 01-1189 (RJL) and *Steven Chasin, et al. v. District of Columbia*, C.A. No. 05-1792 (RJL), former United States District Judge James Robertson enjoined the District from enforcing FEMS' facial hair policy against the Plaintiffs involved in those lawsuits, finding that the District had violated the Plaintiffs' religious freedom under the Religious Freedom Restoration Act.  The injunction in that litigation applies only to those Plaintiffs.

September 28, and October 1, 4, 5, and 6, 2010.  *Id.* ¶¶ 257-267.[4]  On November 23, 2010, Plaintiff was notified of proposed charges for neglect of duty and insubordination for his non-compliance with the facial hair policy.  *Id.* ¶ 273.  The charge proposed a 36-hour suspension without pay and a trial board for Plaintiff's termination.  *Id.* ¶ 276.  After a December 7, 2010 BFC conference, BFC Gretz upheld Plaintiff's proposed suspension.  *Id.* ¶¶ 278-282.  Plaintiff appealed BFC Gretz's decision, and his appeal was denied.  *Id.* ¶ 283.

After Plaintiff completed Fire Inspections training in February, 2011, he was assigned to Ward 2 to conduct fire inspections, and remained in this position – apparently without further incident—until he resigned from FEMS in May, 2013.  *Id.* ¶¶ 285-287.  On August 31, 2012 the EEOC issued a determination finding reasonable cause to believe that discrimination had occurred in Plaintiff's case, and referred the matter to the Department of Justice.  *Id.* ¶ 20.  On June 19, 2013, Plaintiff received notice of right to sue, and filed the above-captioned matter on September 11, 2013.  *Id.* ¶ 21.

In the present case, Plaintiff asserts a handful of claims under various theories.  First, he brings several claims under the ADA, all based on his theory that his PFB qualifies as a disability.  *See* Count 4 (disparate impact under the ADA); Count 7 (failure to accommodate under the ADA); Count 11 (disparate treatment on the basis of disability under the ADA); Count 15 (retaliation for protected activity under the ADA); and Count 26 (improper medical inquiries and examinations under the ADA).  He also brings separate claims under the ADAAA asserting the same theory of disability.  *See* Count 5 (disparate impact under the ADAAA); Count 8 (failure to accommodate under the ADAAA); Count 12 (disparate treatment on the basis of

---

[4] Plaintiff was assigned to the fire prevention division from September, 2010 through February, 2011 but was restricted to office duty as he was not permitted to be in the field while maintaining facial hair.  Compl. ¶¶ 284-285.

disability under the ADAAA); Count 16 (retaliation for protected activity under the ADAAA); and Count 27 (improper medical inquiries and examinations under the ADAAA).

Again relying on his theory that PFB is a disability, Plaintiff also brings several claims under the Rehabilitation Act.  *See* Count 22 (disparate impact on the basis of race under the Rehabilitation Act); Count 23 (failure to accommodate Plaintiff's disability under the Rehabilitation Act); Count 24 (disparate treatment on the basis of disability in violation of the Rehabilitation Act); Count 25 (retaliation for protected activity under the Rehabilitation Act); and Count 28 (improper medical inquiries and examinations under the Rehabilitation Act). Finally, Plaintiff brings several other claims that rely on his theory that PFB is a disability: Count 6 (disparate impact on the basis of disability in violation of civil rights pursuant to 42 U.S.C. § 1983); Count 9 (failure to accommodate for disability in violation of civil rights pursuant to 42 U.S.C. § 1983); Count 10 (failure to accommodate disability in violation of the DCHRA); Count 13 (disparate treatment on the basis of disability in violation of civil rights pursuant to § 1983); and Count 14 (disparate treatment on the basis of disability in violation of the DCHRA).

In addition to those noted above, Plaintiff also brings additional claims that assert retaliation for protected activity.  First, he claims he suffered retaliation when he requested an accommodation for his PFB in violation of his civil rights pursuant to § 1983 (Count 17) and the DCHRA (Count 18).  Second, he claims he suffered retaliation for protected activity when he filed his charge with the EEOC in 2008 in violation of Title VII (Count 19), § 1983 (Count 20) and the D.C. Human Rights Act (Count 21).  Finally, Plaintiff claims disparate impact on the basis of race in violation of Title VII (Count 1), § 1983 (Count 2), and 42 U.S.C. § 1981 (Count 3).

For the reasons demonstrated herein, the Defendants move the Court to dismiss all claims except for Counts 1, 15, 18-19, 21, 25-26 and 28.[5]

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007).  The Supreme Court has established a "two-pronged approach" that a trial court should utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

---

[5] Because the Defendants move to dismiss most of Plaintiff's complaint, Defendants respectfully request that they be permitted to file their Answer after the Court has had the opportunity to consider and rule upon the instant Motion. Defendants submit that permitting them to answer on behalf of only the remaining Defendants and only the remaining claims will promote economy and efficiency and would not prejudice the Plaintiff.

*Id.; see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting

passage with approval).  In other words, a plaintiff's factual allegations must allow a court to

draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual

allegations are proven true.  *See Matrixx Industries, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323

(2011).

### III.   ARGUMENT

#### A. Plaintiff's official capacity claims against Mayor Gray, Chief Ellerbe, and Attorney General Nathan should be dismissed.

Plaintiff names as Defendants, in their official capacities only, Mayor Gray, Chief

Ellerbe, and Attorney General Nathan.  Generally speaking, "[c]laims brought against [District]

employees in their official capacity are treated as claims against the [District] and serve no

independent purpose when the government is also sued."  *Simba v. Fenty*, 754 F. Supp. 2d 19, 22

(D.D.C. 2010) (Roberts, J.) (citations and internal quotations omitted) (dismissing District

officials from suit where claims for damages and equitable relief where the complaint also

named the District which was "in effect, the real party being sued").  Summary dismissal of

redundant official capacity actions is therefore "'the overwhelming approach that has been taken

by members of this Court, as well as the position taken by other courts.'"  *Brown v. Corrections

Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (*quoting Price v. District of Columbia*, 545

F. Supp. 2d 89, 94 (D.D.C. 2008)) (dismissing § 1983 claim against District Official in his

official capacity as maintaining the claim was "unnecessary and inefficient").[6]  Indeed, the

"norm in this jurisdiction" requires a "meaningful reason to take a *different* approach," *Price*,

545 F. Supp. 2d at 95 (emphasis added), and, as set forth below, no such reason exists here.

Here, Plaintiff makes no independent claim for relief against the official capacity

Defendants, nor does he mention them in his Complaint outside of the caption and an

introductory paragraph.  *See* Compl. ¶ 6.  He also fails to allege any facts specific to these

Defendants.  Notably, these individuals are named in their official capacities *only*, and Plaintiff

has made no allegation that any of these officials were involved in any of the incidents described

in the Complaint.  Rather, the Complaint is totally devoid of any factual allegations whatsoever

regarding the named officials.  In light of the foregoing, there is simply no reason to suppose that

Plaintiff's official capacity claims against Mayor Gray, Chief Ellerbe and Attorney General

Nathan are in any way distinct from Plaintiff's claims against the District.  Nor are there grounds

to conclude that the official capacity defendants are necessary for the Court to grant effective

relief.  As a result, for the reasons of judicial economy and lack of prejudice, and consistent with

the "overwhelming approach that has been taken by members of this Court," *Brown*, 603 F.

---

[6] *See e.g.*, *Jefferies v. District. of Columbia*, 11-cv-1159, 2013 WL 66085 (D.D.C. Jan. 7, 2013) (dismissing claims against Chief of Police as redundant where District has also been named); *Day v. District of Columbia*, 10-cv-2250 ESH, 2012 U.S. Dist. LEXIS 18213, at *96-97 (D.D.C. Feb. 14, 2012) (dismissing official capacity claims for equitable relief and damages as redundant of claims against the District "for reasons of judicial economy and lack of prejudice"); *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 58 n. 3 (D.D.C. 2011) (Roberts, J.) (dismissing claims against a District officials "[b]ased upon the understanding that it is duplicative to name both a government entity and the entity's employees"); *Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010) (finding "no reason to deviate" from the "norm" and dismissing claims against the Mayor and District official as duplicative of claims against the District); *Hazel v. Lappin*, 614 F. Supp. 2d 66, 69 (D.D.C. 2009) (summarily dismissing Federal officials sued in their official capacities and treating plaintiffs' *Bivens* action "as if it were brought against the federal government directly"); *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 186-87 (D.D.C. 2009) (Roberts, J.) ("Because plaintiffs [made] the same claims against the District of Columbia, the same claims against [former District officials] in their official capacities [were] redundant and . . . dismissed"); *see also Price*, 545 F. Supp. 2d at 94 (collecting cases).  *But see Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 112 (D.D.C. 2008) (denying a motion to remove Mayor as a named defendant, noting that such removal is permissible but not required), *amended on reconsideration in part* 632 F. Supp. 2d 20 (D.D.C. 2009).

Supp. 2d at 79, Mayor Gray, Chief Ellerbe and Attorney General Nathan should be dismissed from this lawsuit.

**B. The District of Columbia Fire and Emergency Medical Services should be dismissed as *non sui juris*.**

Plaintiff's claims against the FEMS must be dismissed as Plaintiff cannot establish that the agency is *sui juris*.   As judges of this Court have observed, "'in the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities.'"   *Wilson-Greene v. Department of Youth Rehab. Servs.*, 2007 U.S. Dist. LEXIS 49073 *5 (July 9, 2007 D.D.C.) (Leon, J.) (quoting *Daskalea v. Washington Humane Soc.*, 480 F. Supp. 2d 16, 22 (D.D.C. 2007)).   Both local and federal jurists have specifically and conclusively held that the FEMS cannot sue or be sued.   *See, e.g., Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 37-38 (D.D.C. 2012) (Fire Department and the Office of the Attorney General were not *sui juris*); *Zervas v. District of Columbia*, 817 F. Supp. 2d 148, 150 (D.D.C. 1993) (Fire Department and D.C. Office of Personnel not *sui juris*); *Ray v. District of Columbia*, 535 A.2d 868, 869 n.2 (D.C. 1987) (Fire Department, Board of Police and Fire Surgeons, and the Police and Fire Clinic were all *non sui juris*).   Because Plaintiff has not (and indeed cannot) demonstrate by explicit statutory authority that the FEMS can sue or be sued, the Court should dismiss Plaintiff's claims against the FEMS.

**C. Plaintiff's claims under the ADA arose prior to the enactment of the Americans with Disabilities Act Amendment Act; thus, Plaintiff's claims under the ADAAA must be dismissed.**

Plaintiff purports to assert several causes of action pursuant to the ADAAA, which became effective January 1, 2009.[7]  *See* Counts 5, 8, 12, 16, & 27.  First, Plaintiff fails to state a claim under the ADAAA because the ADAAA "merely broadens the scope of protection

---

[7] *See Lee v. District of Columbia*, 733 F. Supp. 2d 156, 157 n.1. (D.D.C. 2010).

available to plaintiffs under the ADA" and does not create a separate cause of action. *Snider v. U.S. Steel-Fairfield Works Med. Dept.*, 2013 WL 1278973, *3 (N.D. Ala. Mar. 26, 2013). Thus, because the "proper cause of action still exists under the ADA," *id.*, the Court should dismiss Counts 5, 8, 12, 16 and 27 for failure to state a claim.

Even if the ADAAA provided a cause of action separate from the ADA, Plaintiff still fails to state a claim upon which relief can be granted because the bases for his claims arose prior to the amendments to the ADA which are not retroactive. *See Singh v. George Washington Univ. Sch. of Med. & Health Sci.*, 667 F.3d 1, 5 (D.C. Cir. 2011); *Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 938 (D.C. Cir. 2009). Here, Plaintiff contends that he first approached FEMS with his alleged disability and request for reasonable accommodation on July 10, 2008, Compl. ¶ 131, well before the ADAAA were enacted. All of Plaintiff's claims relate back to his initial request for an accommodation in July 2008. The "disparate impact" that Plaintiff claims in Count 5 arose when Plaintiff was initially allegedly treated differently after he sought accommodation due to his PFB in 2008. *See* Compl. ¶¶ 345-357. The failure to accommodate claim that forms the basis of Count 8 also relates to FEMS' initial denial of his request for accommodation in 2008. *See* Compl. ¶¶ 382-389. Plaintiff's first change in duty status/suspensions that form the basis of his claim in Count 12 also occurred in 2008. *See* Compl. ¶¶ 114-167; 418-426. Likewise, the alleged retaliation for engaging in the protected activity by requesting an accommodation (Count 16) also occurred in July, 2008, before the effective date of the ADAAA. *See* Compl. ¶¶ 460-472. Finally, the alleged "improper medical inquiries" asserted in Count 27 also initially arose when Plaintiff first consulted with the PFC regarding his PFB in 2008. Thus, the bases for Plaintiff's ADAAA claims – to the extent such claims even exist – all arose before the effective date of the ADAAA.

Moreover, Plaintiff cannot assert a "continuing injury" under the framework set forth in *Bazemore, v. Friday*, 478 U.S. 385 (1986), as there is no "continuing injury:" Plaintiff simply continued to request the same accommodation that had been previously denied. Courts have continuously rejected such an approach by litigants attempting to circumvent the statute of limitations, and the same analysis should be applied to reject the applicability of the ADAAA here.

For example, in *Kennedy v. Chemical Waste Mgmt.*, , the plaintiff truck driver was forced to retreat to a janitorial position with no union representation and no seniority rights after his request for accommodation was denied in 1988. 79 F.3d 49, 49-50 (7th Cir. 1996). Four years later, the plaintiff's doctor found that the plaintiff could again resume his truck driver duties. However, because the plaintiff had lost his 22 years of seniority, he was laid off as part of a reduction in his employer's work force, and was not asked back when the work force was re-hired. *Id.* at 50. Six years later, the plaintiff asked his employer again to reinstate him and to accommodate his disability. *Id.* The employer refused and he filed suit under the ADA. *Id.* at 51. The Seventh Circuit Court of Appeals denied his claim, holding that the ADA claim had accrued when the plaintiff first was denied accommodation in 1988, and that the 300-day statute of limitations on the plaintiff's ADA claim therefore had expired. *Id.* In rejecting the plaintiff's argument, the Seventh Circuit reasoned:

> The practical objection to this argument is that if accepted it would as a practical matter eliminate the statute of limitations in ADA cases. An employee discharged in 1992 could sue in 2002 after unsuccessfully demanding reinstatement, on the ground that he had been denied an accommodation. The proper analogy is to cases in which an employee seeks to extend Title VII's statute of limitations (incorporated by reference in the ADA) by reapplying for the job from which he claims to have been unlawfully fired, even though it is plain that reapplication is not invited. This ploy—which resembles trying to take an untimely appeal by first filing a Rule 60(b) motion to set aside the judgment and then appealing from the denial of the motion, *North American Telecommunications Ass'n v. FCC*, 772

F.2d 1282, 1286 (7th Cir. 1985)—has not succeeded in Title VII cases. *Webb v. Indiana National Bank*, 931 F.2d 434, 436-37 (7th Cir. 1991); *Dugan v. Ball State University*, 815 F.2d 1132, 1135 (7th Cir. 1987); *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985) (per curiam).   It should not succeed in ADA cases either. *Graehling v. Village of Lombard, supra,* 58 F.3d at 296-97.

*Id.*, 79 F.3d at 51.  Other circuit courts have come to the same conclusion.  *See, e.g., Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998) (holding that plaintiff's ADA claim was barred by the statute of limitations, because "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."); *Connor v. Reckitt & Coleman, Inc.*, 84 F.3d 1100, 1102 (8th Cir. 1996) (holding that plaintiff's ADA claim was barred by the statute of limitations, because "allowing [plaintiff] to restart the statute of limitations by sending a letter requesting reasonable accommodations … would destroy the statute of limitations.").

Similarly, here, Plaintiff cannot contend that FEMS' refusal to grant subsequent, yet identical, requests for accommodation was a "continuing violation" that would stretch Plaintiff's potential claims within the ambit of the non-retroactive ADAAA.   Thus, to the extent the ADAAA provides a cause of action that is separate from the ADA, Plaintiff's claims would still fail, as they arose prior to the non-retroactive amendments.   Accordingly, the Court should dismiss Counts 5, 8, 12, 16, and 27.

### D.  Plaintiff has not pled that he suffered from a "disability" that substantially interferes with a major life activity.

The ADA prohibits discrimination on the basis of disability, including the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee.   42 U.S.C. § 12112(b)(5)(A).   "Disability," under the pre-ADAAA is defined as "a physical or mental impairment that substantially limits one or more of

the major life activities." *Id.* § 12102(1)(A).[8]  In order to state a claim under the ADA, a litigant must demonstrate an impairment that substantially limits a major life activity.  *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008).  Plaintiff cannot meet this standard for many reasons.

### 1.  Plaintiff has not pled the plausible existence of an "impairment" that "substantially limits a major life activity."

Plaintiff's claimed impairment is his PFB.  *See* Compl. *passim*.  While a skin condition could be construed as a medical condition, merely pleading an "impairment" is not enough; rather, the impairment must substantially limit at least one major life activity.  *Adams*, 531 F.3d at 943-44; *see also id.* at 944 ("the Supreme Court has explained that 'the word "major" denotes comparative importance and suggests that the touchstone for determining an activity's inclusion under the statutory rubric is its significance.'") (quoting *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998)).; *see also Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132 (D.D.C. 2004) (impairments such as hypertension or high blood pressure that can be controlled or mitigated with medication so as to not be substantially limiting are not disabilities under the ADA).  Our Circuit has explained that, "as the ADA's legislative history makes clear, the substantial limitation and major life activity requirements act as statutory filters distinguishing those suffering from relatively serious impairments from those with minor, trivial impairments." *Adams*, 531 F.3d at 944 (quotation, alteration and citation omitted).

Plaintiff has not pled any facts that could plausibly support a conclusion that his PFB substantially limits any major life activity.  While "self-care" has been recognized as a major life activity under the ADA both before and after the ADAAA, *see EEOC v. AutoZone, Inc.*, 630 F.3d 635, 640 (7th Cir. 2010) (citing cases), here, Plaintiff is able to groom himself by shaving his face – he is only limited, by his own admission, in shaving his face *closely*.  *See, e.g.,* Compl.

---

[8] Other forms of "disability" under the ADA are "a record of such impairment" and "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(B)-(C).

¶¶ 116-117; 139-140.  Courts have noted that the use of the term "substantially limits" "indicated that the ADA 'precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities.'"  *AutoZone*, 630 F.3d at 641 (quoting *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002)).[9]  Likewise, courts generally hold that an impairment that merely *affects*, but does not *substantially limit*, a major life activity is insufficient to state a claim under the ADA.  For example in *Coleman-Adebayo*, *supra*, the Court found that the plaintiff's hypertension was not a disability because it did not substantially impair her life's activities of walking, breathing and seeing as long as she took her medication.  *Coleman-Adebayo*, 326 F. Supp. 2d at 142.  Here, while Plaintiff's PFB may affect his ability to shave in that it requires him not to shave within 1/8 of an inch of his skin, it does not substantially impair his ability to groom himself, and the condition itself is controlled or mitigated by Plaintiff maintaining 1/8 of an inch of facial hair.[10]

    To the extent Plaintiff contends that he is substantially limited in the major life activity of "working," his claims also must fail:[11]

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.... To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is

---

[9] Indeed, even in cases where claimants demonstrated difficulties grooming overall, courts have found that such difficulties were not "substantial" in performing this life activity.  *See, e.g., Didier v. Schwan Food Co.*, 465 F.3d 838 (6th Cir. 2006) (affirming trial court's determination that injuries to right hand and arm of right-handed individual were not an "impairment" under the ADA; although it took the individual longer to shave, clean himself, brush his teeth, feed himself, and dress because he had to perform these activities with his left hand, the medically imposed restrictions were not "substantial").

[10] Thus, even under the ADAAA, which expressly includes "caring for oneself" as a major life activity, Plaintiff has pled no facts to support his position that not being able to *closely* shave his facial hair, as opposed to shaving his facial hair within 1/8 of an inch of his face, is substantial limitation of a major life activity.

[11] It should be noted that the D.C. Circuit has only assumed, but not decided, that working is a major life activity under the ADA.  *See Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 n.1 (D.C. Cir. 2001).

17

not precluded from a substantial class of jobs.  Similarly, if a host of different
types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air lines, Inc.*, 527 U.S. 471, 491-92 (1999).  Here, Plaintiff has simply alleged

that his PFB limits his ability to be employed in his prior position with FEMS.  But, "[a]s *Sutton*

makes clear, in order to demonstrate that an alleged impairment substantially limits an

individual's ability to work, the individual must prove that he or she is 'precluded from more

than ***one*** type of job.'" *Jones v. Quintana*, 658 F. Supp. 2d 183, 202 (D.D.C. 2009) (quoting

*Sutton*, 527 U.S. at 491-92) (emphasis in *Jones*); *see also Gasser v. District of Columbia*, 442

F.3d 758, 763-64 (D.C. Cir. 2006) (same).[12]  Plaintiff's failure to plead that his PFB substantially

limited his ability to work in any position other than his own is fatal to his ADA claims.  *See id.*

(dismissing plaintiff's ADA claim because plaintiff had not sufficiently alleged any facts

supporting a reasonable inference that her alleged anxiety impairment precluded her from

working any other job beside the particular one from which she was terminated).

Moreover, other courts that have examined the issue have also determined that PFB does

not substantially limit one's ability to work.  *See Seaborn v. State of Fla. Dept. of Corrections*,

143 F.3d 1405 (11th Cir. 1998) (affirming the "well-reasoned district court opinion" dismissing

ADA claims and concluding that correctional officers' PFB was not a disability because PFB

"does not substantially limit Appellants' ability to work");[13] *Stewart v. City of Houston*, 2009

---

[12] In its ADAAA regulations, the EEOC has maintained this standard, stating that "where an individual has a need to demonstrate that an impairment substantially limits" working, the individual can show that "the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities."  EEOC's Final Regulations preamble and Appendix (March 25, 2011).

[13] Prior to *Seaborn*, the Eleventh Circuit stated that while it "appear[ed]" to be "probable" that the district court erred in finding that firefighters suffering from PFB did not qualify as "handicapped individuals" under the Rehabilitation Act, the Court expressly stated it was "not necessary for [it] to rule on that issue."  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1126 (11th Cir. 1993).  In *Seaborn,* decided after *Fitzpatrick*, the Eleventh Circuit concluded that the district court correctly ruled that PFB did *not* qualify as a disability substantially limiting one's ability to work.

18

WL 2849728 (S.D. Tex. Sept. 3, 2009) (PFB determined not to be a disability substantially limiting the major life activity of working because police officer plaintiffs only claimed that they could not work in all departments of the Houston Police Department and could not work overtime; rather, the impairment must substantially limit employment generally); *Green v. Safeway Stores, Inc.*, 1998 WL 898366 (N.D. Cal. Dec. 14, 1998) (plaintiff's claim that PFB was an impairment under the ADA failed, *inter alia*, because plaintiff had not demonstrated that PFB restricted him from performing a class of jobs or a broad range of jobs in various classes).

Plaintiff's failure to plead plausible facts to support his assertion that he suffers from a disability that substantially affects a major life activity is fatal to his disability-related claims under the ADA. Thus, Plaintiff cannot proceed on his disparate impact claims on the basis of disability under the ADA (Count 4), ADAAA (Count 5), § 1983 (Count 6), and the Rehabilitation Act (Count 22)[14] as these claims are all based on Plaintiff's unsupported assertion that PFB qualifies as a disability. *See* Compl. ¶¶ 336, 349, 363 & 549. Thus, the Court should dismiss Counts 4, 5 6 and 22 . Likewise, Plaintiff's claims contending that the Defendants failed to accommodate his disability under the ADA (Count 7), ADAAA (Count 8), § 1983 (Count 9), the DCHRA (Count 10), and the Rehabilitation Act (Count 23) also are based on Plaintiff's unsupported assertion that he is a "qualified person with a disability [who] requested a reasonable accommodation." *See* Compl. ¶¶ 375, 384, 393, 403 & 562. Because Plaintiff did not suffer from a "disability" as contemplated by the ADA, the Court should dismiss Counts 7, 8, 9, 10 and 23 as well.

Plaintiff also claims that he was a "qualified individual with a disability" subjected to disparate treatment on this basis of his disability in violation of the ADA (Count 11), the

---

[14] The Rehabilitation Act employs the same definition of "disability" as the ADA. *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 83 n.15 (D.D.C. 2009).

ADAAA (Count 12), his civil rights under § 1983 (Count 13), the DCHRA (Count 14), and the Rehabilitation Act (Count 24). *See* Compl. ¶¶ 411-415; 420-423; 430-433; 440-443 571-575. Because Plaintiff cannot contend that he was subjected to disparate treatment on the basis of a condition that is not a disability, Counts 11, 12, 13, 14 and 24 must be dismissed.

### E.  Plaintiff's constitutional claims must be dismissed

#### 1. Plaintiff has failed to comply with the applicable statute of limitations for his constitutional claims.

##### a.    Plaintiff's Section 1983 claims should be dismissed for failure to comply with the statute of limitations.

Because Section 1983 does not itself contain a statute of limitations, the limitations period for personal injury claims of the state in which the alleged violation occurs is applied. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  When a state has multiple limitations periods for personal injury actions, the applicable statute is the general or residual statute of limitations; thus, our Circuit applies the District of Columbia's three-year residual statute of limitations to claims brought pursuant to Section 1983. *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012); *Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003).

"[W]hile the statute of limitations for a § 1983 claim is a matter of state law, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'" *Morris v. Carter Global Lee, Inc.*, 2013 WL 5916816, *4 (D.D.C. Nov. 5, 2013) (quoting *Wallace*, 549 U.S. at 388) (emphasis in *Wallace*).  Accordingly, "[a] § 1983 claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotations and citations omitted).

Moreover, the statute of limitations is not tolled by the filing of a charge with the EEOC. "[B]ecause there is no requirement to exhaust administrative remedies under [42 U.S.C. §§ 1981;

1983] before proceeding to court[,] Employees who believe they have suffered discrimination have the right to bring a Section 1981 or a Section 1983 claim at any time within three years of the alleged discrimination." *Carter v. District of Columbia*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (citations omitted). "Furthermore, because a Section 1981 claim is 'separate from and independent of' Title VII, the statute of limitations on a Section 1981 or Section 1983 claim is not tolled by the pendency of administrative action on a Title VII claim." *Id.* (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 (1975). Thus, Plaintiff was required to bring his claims of alleged discrimination in violation of his civil rights under § 1983 within three years of the alleged discrimination. *Id.*

Here, Plaintiff has brought several causes of action pursuant to § 1983 that accrued well over three years prior to the filing of his lawsuit on September 11, 2013. Plaintiff's Count 2 asserts disparate impact on the basis of race, alleging that FEMS' facial hair policy is unconstitutional as far as it creates a disparate impact on African American males. Compl. ¶¶ 306-319. Here, Plaintiff alleges that the policy was instituted in 2005, applied to Plaintiff in July, 2008, and that he first told FEMS that he believed he was being discriminated against on July 10, 2008. Compl. ¶¶ 2; 123-131. The statute of limitations for any cause of action Plaintiff may have had for disparate impact on the basis of race would have expired in July, 2011. As a result, the section 1983 claim asserted in Count 2 is time-barred.

Plaintiff also asserts, in Counts 6 and 13, claims for disparate impact on the basis of disability in violation of § 1983. Plaintiff's contention in Count 6 is that FEMS' facial hair policy violated his rights under § 1983 because it "calls for discipline of firefighters who are not clean shaven" and as a result "individuals who cannot shave because of PFB are disciplined." Compl. ¶ 361. In Plaintiff's claim pursuant to Count 13, Plaintiff specifically asserts that,

pursuant to FEMS' policy, he was subjected to disparate treatment when he was suspended on the basis of his disability, placed on limited or light duty because of his disability, and forced to take leave on the basis of his disability. Compl. ¶¶ 431-433. Plaintiff was first disciplined by FEMS for failure to comply with the policy when he was suspended in 2008; thus, the statute of limitations for any claim based on an alleged violation of Plaintiff's civil rights also would have expired in 2011. Thus, Counts 6 and 13 are also time-barred.

Count 9 of Plaintiff's complaint asserts that FEMS' alleged failure to accommodate Plaintiff's disability violated his rights pursuant to § 1983. Compl. ¶¶ 390-400. Plaintiff claimed that he requested accommodation in July, 2008 and that FEMS failed to accommodate him. Compl. ¶ 131. Thus, Plaintiff's cause of action for failure to accommodate in violation of his constitutional rights accrued when FEMS first declined to accommodate Plaintiff's request. Plaintiff's § 1983 claim for failure to accommodate, filed more than three years later, is time barred, and thus Count 9 must be dismissed.

Plaintiff likewise claims, in Counts 17 and 20, that he was subject to retaliation for engaging in the protected activity of (1) requesting a reasonable accommodation (Count 17) and (2) in filing his charges with the EEOC in 2008 (Count 20) in violation of § 1983. Specifically, Plaintiff claims that FEMS suspended him, placed him on light or limited duty, forced him to take leave, subjected him to medical inquiries, and recommended his retirement, all in retaliation for Plaintiff's exercise of his rights in requesting an accommodation and for filing his charges with the EEOC. Compl. ¶¶ 473-487; 514-528. Each of these actions, however, initially occurred in 2008, more than three years before the filing of Plaintiff's complaint. Thus, Counts 17 and 20 must be dismissed.

In short, Plaintiff has failed to comply with the statute of limitations for any of his claims brought pursuant to 42 U.S.C. § 1983. The Court should therefore dismiss Plaintiff's § 1983 claims.

> **b.   Plaintiff's Section 1981 claims should be dismissed for failure to comply with the statute of limitations.**

"For statute of limitations purposes, the Supreme Court treats section 1981 claims like claims brought under 42 U.S.C. § 1983." *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62 (1987)). And, the statute of limitations for Plaintiff's § 1983 would not be tolled by Plaintiff's filing of a Title VII claim with the EEOC on the same facts. *Johnson v. Railway Express Agency*, 421 U.S. 454, 465-66 (1975); *see also Carter v. District of Columbia*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998). Accordingly, the three-year residual statute of limitations applies to Plaintiff's Section 1981 claims, as well as his Section 1983 claims. *Id.*

Here, Plaintiff claims, pursuant to Count 3, that FEMS' facial hair policy, which results in the discipline of individuals that cannot shave due to PFB, has a disparate impact on black men than on white men because "[s]ignificantly more black men have PFB than white men." Compl. ¶ 310. Plaintiff acknowledges, however, that he has been subjected to this policy since 2008; thus any § 1981 claim he would have had accrued in 2008 and must have been asserted within three years of its accrual. Thus, Count 3 is time-barred and must be dismissed.

> **2. Plaintiff's Section 1983 claims based on alleged Title VII violations fail to state a claim upon which relief can be granted**

Alternatively, Plaintiff's § 1983 claims based on alleged rights under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, must be dismissed for failure to state a claim. "[I]ndividuals cannot bring suit under § 1983 to redress violations of rights conferred by Title

VII because a right created by Title VII must be asserted directly under Title VII." *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 110-111 (D.D.C. 2010) (*cf. Great American Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 377 (1979)). In fact, "'when the only § 1983 cause of action is based on a violation of Title VII,' a plaintiff's 'exclusive remedy' is provided by Title VII." *Jones v. District of Columbia*, 879 F. Supp. 2d 69, 87 (D.D.C. 2012) (citing *Day v. Wayne Cnty. Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984)).

Here, Counts 2 and 20 of plaintiff's Compliant must be dismissed for failure to state a claim.  In Count 2, plaintiff alleges disparate impact on the basis of race in violation of § 1983. *See* Compl. ¶¶ 306-319.  Plaintiff brings this claim alleging that maintaining a practice that causes a disparate impact on the basis of race in violation of Title VII of the Civil Rights Act of 1964 is a violation of § 1983.  (Compl. ¶¶ 307-317).  Similarly, in Count 20, plaintiff alleges retaliation for protected activity in violation of § 1983.  *See* Compl. ¶¶ 514-528.  Plaintiff brings this claim alleging that unlawful discrimination against an individual because he has engaged in protected activity under Title VII of the Civil Rights Act of 1964 is also a violation of § 1983. Compl. ¶¶ 515-526.  Because both of these counts alleging § 1983 cause of action are based on a violation of Title VII, they cannot be sustained.  *See Hamilton*, 720 F. Supp. 2d at 110-111; *Jones*, 879 F. Supp. 2d at 87.  Therefore, the Court should dismiss Count 2 and Count 20 of Plaintiff's Compliant.

### 3. Plaintiff's Section 1981 claim must also be dismissed for failure to state a claim.

Plaintiff's claim of disparate impact on the basis of race in violation of 42 U.S.C. § 1981 must be dismissed for failure to state a claim.  A plaintiff "cannot bring a disparate impact claim under 42 U.S.. § 1981, since purposeful discrimination is required under § 1981." *McReynolds v. Sodexho Marriott Servs., Inc.,* 349 F. Supp. 2d 1, 7 n.3 (D.D.C. 2004) (citing *General Bldg.*

*Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982)).   Here, Plaintiff's § 1981

claim solely rests on his allegations that the FEMS' policy has a disparate impact on black men.

*See* Compl. ¶¶ 322-327.   Thus, as a matter of law, Plaintiff has not pled plausible facts to support

a claim of purposeful discrimination under § 1981, and thus Count 3 must be dismissed.

### F.  Plaintiff lacks standing to seek injunctive relief

Plaintiff acknowledges that he has resigned from his position at FEMS; thus, he lacks

standing to pursue the declaratory and injunctive relief sought in his Prayer for Relief.   In order

to establish standing, the party invoking federal jurisdiction bears the burden of demonstrating

the "irreducible constitutional minimum" requirement of (1) personal injury-in-fact, (2)

causation, and (3) redressability.   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).   As

the Supreme Court explained in *Los Angeles v. Lyons*, a plaintiff does not have the requisite

injury-in-fact to establish standing to seek injunctive relief unless he shows a "real or immediate

threat that [he] will be wronged again." 461 U.S. 95, 111 (1983).[15]   Standing to seek injunctive

relief must be analyzed separately from standing to seek retrospective relief.   *See id.* at 111-12.

And according to the law of this circuit, the *Lyons* standard applies equally to injunctive and

declaratory relief.   *See Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) ("[a]lthough *Lyons*

---

[15] In *Lyons*, the plaintiff sued after being choked by a Los Angeles County police officer, alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.   461 U.S. at 98.   Holding that *Lyons* lacked standing to seek prospective injunctive relief, the Supreme Court explained:

> Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.

*Id.* at 105-106.  Lyons' injury, however, was in the past, and he had not alleged a sufficient likelihood that he would suffer future injury. Specifically, the Court found that any likelihood rested on contingent events occurring at some time in the future: namely, that plaintiff himself would again be stopped by the police and would again be choked without any provocation or legal excuse. *Id.* at 106 n.7.

and its predecessors involved injunctive relief, whereas [the plaintiff] seeks declaratory relief, we do not distinguish *Lyons* on this basis").

Here, Plaintiff has not and cannot demonstrate any threat of future harm as he is no longer employed by the FEMS.  Without standing, Plaintiff cannot seek declaratory of injunctive relief; thus, his requests for such relief must be dismissed.

## IV.    CONCLUSION

For the reasons demonstrated above, Defendants respectfully request that the Court dismiss all claims against Mayor Gray, Chief Ellerbe, and Attorney General Nathan, and dismiss Counts 2-14, 16-17, 20, 22-24, and 27 in their entirety.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Section Chief
Civil Litigation Division, Section III

/s/ *Shana L. Frost*
SHANA L. FROST [458021]
Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  741-8934
shana.frost@dc.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MANU KENNEDY,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No. 13-CV-1384 (RLW)** |
| | **:** | |
| **VINCENT C. GRAY,** *et al.,* | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

**ORDER**

Before the Court is the Defendants' partial motion to dismiss.  Upon consideration of Defendants' motion, and any opposition or reply thereto, it is this ___ day of _____, 2014:

ORDERED that Defendants' partial motion to dismiss be and hereby is **granted**; and it is

FURTHER ORDERED that all claims against Mayor Vincent Gray, Chief Kenneth Ellerbe, and Attorney General Irvin Nathan be and hereby are **dismissed**; and it is

FURTHER ORDERED that Counts 2-14, 16-17, 20, 22-24, and 27 be and hereby are **dismissed.**

_____
Ronald L. Wilkins
United States District Judge

Copies served on all counsel of record via the Court's ECF filing system