## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| MANU KENNEDY, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 1:13-01384-CRC** |
| | ) |
| HON. VINCENT GRAY, MAYOR, et al. | ) |
| | ) |
|          **Defendant.** | ) |

_____ )

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

　　　　Plaintiff, by and through his undersigned counsel, hereby submits his Opposition to Defendant's Partial Motion to Dismiss.

1.　　Plaintiff has stated claims against Mayor Gray, Chief Ellerbe, and Attorney General Nathan;

2.　　Plaintiff does not oppose the dismissal of FEMS as *non sui juris* and therefore withdraws his claims against FEMS only;

3.　　The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") applies to all incidents occurring on or after January 1, 2009, and as such, Plaintiff's disability claims, including his failure to accommodate claim, should not be dismissed; [1]

4.　　Plaintiff has pled facts to demonstrate that he has a disability that substantially limits bodily functions and/or major life activities;

5.　　Plaintiff's claims under 42 U.S.C. § 1983 are not barred by the statute of limitations;

6.　　Plaintiff's claim pursuant to 42 U.S.C. §1981 (Count 3) is not barred by the applicable statute of limitations, but, as stated in number eight, below, Plaintiff does not oppose the dismissal of Count 3 for other reasons;

7.　　Plaintiff does not oppose the dismissal of Counts 2 and 20 for the reasons Defendant states and therefore withdraws those claims;

---

[1] To the extent that Plaintiff has alleged disability-based claims arising prior to January 1, 2009 that are based upon the premise that Plaintiff is an individual with a disability under the pre-ADAAA standards, Plaintiff hereby withdraws those Counts (4, 7, and 11).

8.    Plaintiff does not oppose the dismissal of Count 3 for the reasons Defendant states and therefore withdraws that claim; and

9.    Plaintiff has pled sufficient facts to establish jurisdiction for the purposes of declaratory and injunctive relief.

**DATED: April 16, 2014**                    Respectfully Submitted,

/s/ Shannon C. Leary_____
Shannon C. Leary (Bar. No. MD18396)
Attorney for Plaintiff
The Law Offices of Gary M. Gilbert and Associates
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
Telephone: 301-608-0880
Facsimile: 301-608-0881
sleary@ggilbertlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**MANU KENNEDY,**                                   )
                                                    )
                                                    )
        **Plaintiff,**                              )
                                                    )
**v.**                                              )        **Civil Action No. 1:13-01384-CRC**
                                                    )
**HON. VINCENT GRAY, MAYOR, et al.**                )
                                                    )
        **Defendant.**                              )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Plaintiff, by and through his undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of his Opposition to Defendant's Partial Motion to Dismiss. For the reasons set forth below, the Court should deny Defendant's Partial Motion to Dismiss ("Motion").

1. Plaintiff has stated claims against Mayor Gray, Chief Ellerbe, and Attorney General Nathan;

2. Plaintiff does not oppose the dismissal of FEMS as *non sui juris* and therefore withdraws his claims against FEMS only;

3. The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") applies to all incidents occurring on or after January 1, 2009, and as such, Plaintiff's disability claims arising on or after January 1, 2009, including his failure to accommodate claim, should not be dismissed;[1]

---

[1] To the extent that Plaintiff has alleged disability-based claims arising prior to January 1, 2009, that are based upon the premise that Plaintiff is an individual with a disability under the pre-ADAAA standards, Plaintiff hereby withdraws those Counts (4, 7, and 11).

4.  Plaintiff has pled facts to demonstrate that he has a disability that substantially limits bodily functions and/or major life activities under the ADAAA;

5.  Plaintiff's claims under 42 U.S.C. § 1983 are not barred by the statute of limitations;

6.  Plaintiff's claim pursuant to 42 U.S.C. §1981 (Count 3) is not barred by the applicable statute of limitations, but, as stated in number eight, below, Plaintiff does not oppose the dismissal of Count 3 for other reasons;

7.  Plaintiff does not oppose the dismissal of Counts 2 and 20 for the reasons Defendant states and therefore withdraws those claims;

8.  Plaintiff does not oppose the dismissal of Count 3 for the reasons Defendant states and therefore withdraws that claim; and

9.  Plaintiff has pled sufficient facts to establish jurisdiction for the purposes of declaratory and injunctive relief.

## I.       STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint." *Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 84 (D.D.C. 2013) (citing *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible when the facts pled in the complaint allow the Court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Coley v. Bank of America Corp.*, -- F.Supp.2d --, 2014 WL 1280214, at *2 (D.D.C. 2014) (internal citations omitted).   The plaintiff need not plead all of the elements of a prima facie case in the complaint . . . nor must the plaintiff plead facts or law that

match every element of a legal theory." *Id.* (internal citations omitted).   When ruling on a

motion to dismiss, the Court, "must accept as true all of the factual allegations contained in the

complaint," and, "give the plaintiff 'the benefit of all inferences that can be derived from the

facts alleged.'" *Id.* (quoting *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir.

2009); *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

As discussed in more detail below, Plaintiff not only pled facts that "state a claim for relief

that is plausible on its face," but went so far as to "plead all of the elements of a prima facie

case," and "plead facts [and] law that match every element of a legal theory."  As such,

Defendant's Motion should be denied.

## II.    ANALYSIS

### A.  Plaintiff States Viable Claims Against Mayor Gray, Chief Ellerbe, And Attorney General Nathan

The Court is not required to dismiss the complaint against Mayor Gray, Chief Ellerbe,

and Attorney General Nathan.  The Court has previously denied similar motions to dismiss

where defendants have alleged that naming such public officials was redundant.  In *Owens v.*

*District of Columbia*, this Court declined to dismiss the claims against Mayor Adrian Fenty in his

official capacity, noting "there is no requirement that . . . the public official defendant must be

dismissed."  631 F. Supp. 2d 48, 54 (D.D.C. 2009).  The Court also denied a motion to dismiss

claims against Mayor Fenty in *Johnson v. District of Columbia*, again stating, "[E]ven though

retaining the Mayor as a party in the suit is redundant, there is no requirement that, because of

the equivalence, the public official defendant must be dismissed."  572 F. Supp. 2d 94, 112

(D.D.C. 2008) (quoting *Winder v. Erste*, 2005 WL 736639, at *5 (D.D.C. 2005)).  Finally, in

*Winder v. Erste*, the Court denied a motion to dismiss claims against the acting Superintendent of

the District of Columbia Public Schools, once again holding that such a dismissal was not

required.  2005 WL 736639, at *5 (D.D.C. 2005).  Therefore, as there is no requirement that the

Court dismiss the claims against Mayor Gray, Chief Ellerbe, and Attorney General Nathan,

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

### B.  The ADAAA Applies

Contrary to Defendant's assertion, Plaintiff does not seek the retroactive application of

the ADAAA.  Rather, Plaintiff simply requests the court apply the relevant controlling law in

place at the time each discrete employment act occurred, i.e., that, in addressing the disability

claims, that the ADAAA apply to all events that took place on or after January 1, 2009, the

effective date of the ADAAA.

Defendant makes several convoluted arguments in its effort to have the court dismiss

Plaintiff's cognizable claims under the ADAAA.  The arguments, however, fail.  Defendant's

argument boils down to a claim that because the acts that were discriminatory under the ADAAA

began before the ADAAA was effective, Defendant should be permitted to discriminate even

after the ADAAA became the controlling law.  Motion at 12-14.  This flies in the face of reason.

It is the equivalent of arguing that because an employer refused to put a ramp in the workplace to

accommodate an individual in a wheelchair prior to the Americans with Disabilities Act

("ADA") becoming effective, it would be permitted to continue to refuse to put a wheel chair

ramp in the workplace as an accommodation *after* the ADA was effective.  Likewise, it is akin to

arguing that an employer could harass an African American employee in 1965 due to the

employee's race because the employer began harassing the employee in 1963, before Title VII

was effective.

1. **The ADAAA Governs All Discrete Incidents Occurring On Or After January 1, 2009, And Plaintiff Does Not, As Defendant Suggests, Request That It Apply Retroactively**

Defendant correctly states that the ADAAA does not apply retroactively. Plaintiff does not claim otherwise. Rather, Plaintiff simply contends that, as made clear by the Equal Employment Opportunity Commission ("EEOC"), which was charged with rule making related to the ADAAA, the ADAAA applies, "to denials of reasonable accommodation where a request was made (*or an earlier request was renewed*) or to other alleged discriminatory acts that occurred on or after January 1, 2009." EEOC, Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008, http://www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm (last visited Apr. 8, 2014) (emphasis added).

As this Court and others have stated, applying the amendments retroactively would hold employers accountable for failing to meet standards that did not exist, and of which the employer did not have knowledge, during the relevant time period, thereby "imposing a new legal burden . . . to past conduct." *Singh v. George Washington Univ. School of Med. & Health Sciences*, 667 F.3d 1, 5 (D.C. Cir. 2011) ("Applying the ADAA to the University's decision in 2003 to dismiss Singh would be changing the laws that governed the University's liability at that time, imposing a new legal burden on the University's past conduct. As such, its application would be impermissibly retroactive."); *see Lytes v. D.C. Water & Sewer Co.*, 572 F.3d 936 (D.C. Cir. 2009) (explaining that, absent clear statutory language or structure indicating whether a statute should be applied retroactively, the concern and focus in determining whether to apply a statute retroactively is whether it "would have a retroactive consequence in the disfavored sense of

'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'") (quoting *Fernandez–Vargas v. Gonzales,* 548 U.S. 30, 37 (2006)).

The concern that applying laws retroactively results in holding employees accountable for laws that did not govern at the relevant time and in "imposing a new legal burden," as discussed in the cases above, is not an issue here. In the instant matter, Plaintiff simply requests the Court apply the ADAAA to the incidents occurring on or after January 1, 2009, when the ADAAA became the controlling law. As of that time, Defendant knew or should have known at the time of the governing law and its responsibilities under that law. As application of the ADAAA to all incidents occurring on or after January 1, 2009, would not impose new legal burdens on Defendant, all discrete disability related claims arising during that timeframe should be analyzed under the ADAAA and therefore state a claim. As discussed below, these discrete claims involve not only requests for medical information, disciplinary actions, and other employment-related actions, but also the discrete act of Defendant denying Plaintiff's 2009 request for accommodation.

Moreover, although this Court has refrained from directly ruling on the issue of which law governs disability claims such as those here,[2] other Courts have ruled upon the issue and adopted the EEOC's stated position. *See Johnson v. J.P. Morgan Chase & Co.*, 922 F. Supp. 2d 658, 668-71 (S.D. Ohio 2013) (analyzing plaintiff's failure to accommodate claims, which began in 2008 but continued thereafter, under the ADA for the failure to accommodate pre-2009, and under the ADAAA for the failure to accommodate as it continued in 2009 onward); *Rumbin v. Assoc. of Am. Medical Colleges*, 803 F.Supp. 2d 83, n.4 (D.C. Conn. 2011) ("The ADAAA does,

---

[2] *See Klute v. Dep't of Veteran's Affairs*, 840 F. Supp. 2d 209, n.4 (D.D.C. 2012) ("Nonetheless, because it concludes that the plaintiff has failed to demonstrate that he is disabled even under the more forgiving post-amendment standard, the Court will not endeavor to determine which standard, or combination thereof, must be applied when the allegedly discriminatory conduct occurred both before and after the enactment of the amendments.").

however, apply to Mr. Rumbin's claim that he continues to be denied accommodations after January 1, 2009."); *Garner v. Chevron,* 834 F. Supp. 2d 528, 536 (S.D. Tex. 2011) ("Thus the ADAAA applies to Garner's claims in 2009, but only the ADA applies to her 2007 claims.").  In light of the courts' decisions in these matters, the EEOC's guidance on the issue, and the fact that that applying the ADAAA to events occurring on or after January 1, 2009, would <u>not</u> impose new legal burdens on Defendant of which it was unaware during the relevant timeframe, the ADAAA applies to all discrete acts that occurred from January 1, 2009, and thereafter.

## 2. Defendant's Denial Of Plaintiff's 2009 Request For Accommodation Was A Discrete Act

Defendant erroneously asserts that Plaintiff has set forth a continuing violation claim. Motion at 14.  Plaintiff has not made any claim of a continuing violation; instead, Plaintiff alleges that Defendant's denial of his March 2009 request for accommodation was a discrete act. *See* Compl. ¶ 178.  Further, in its failed attempt to argue that Plaintiff has put forth an ongoing violation claim, Defendant fails to cite any cases that are analogous to the instant matter.

As noted above, even where a request for an accommodation was originally made pre-January 1, 2009, where an employee renews that request on or after January 1, 2009, a denial of the renewed request is a discrete act that must be analyzed under the ADAAA's standards.  *See* EEOC, Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008, http://www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm (last visited Apr. 8, 2014) ("However, the ADAAA would apply to denials of reasonable accommodation where a request was made (or an earlier request was renewed) or to other alleged discriminatory acts that occurred on or after January 1, 2009.").  It is *not* a claim of a continuing violation, as Defendant improperly argues.

The EEOC's guidance is logical, given that a post-January 1, 2009, denial involves an entirely different set of rights and responsibilities under new legal standards than a pre-January 1, 2009, denial.  Where a new set of facts that impact the rights and responsibilities of an employee and employer is at play, a denial of a request for accommodation is a discrete employment act, even if a request for accommodation was previously denied.  For example, where an employee's medical condition and/or job duties change significantly, a denial of a new request for accommodation under the changed circumstances creates a new cause of action. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 132-33 (1st Cir. 2009) ("'[I]f an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.'  Indeed, in the context of disability discrimination, any other approach would fail to take into account the possibility of changes in either the employee's condition or the workplace environment that could warrant a different response from the employer to renewed requests for accommodation.") (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)).

In an apparent effort to support its untenable argument that Plaintiff is asserting a continuing violation claim and that the 2009 denial was not a discrete act, Defendant's brief affirmatively misstates the Seventh Circuit's holding in *Kennedy v. Chemical Waste Mgmt.*, the case on which Defendant relies most heavily.  Motion at 14; 79 F.3d 49 (7th Cir. 1996).  Defendant states that the court held that "the ADA claim had accrued when the plaintiff was first denied accommodation in 1988."  Motion at 14.  This is incorrect; the court did not make the alleged statement.  Indeed, it would not have made that statement, given that the ADA was not effective until 1992, and so the plaintiff could not have had a right of action that began in 1988, prior to the ADA's effective date.  Rather, the court affirmed the lower court's ruling, which held

"that the plaintiff's claim arose earlier, in 1992 [rather than in 1994]."  79 F.3d 49, 50 (7th Cir.

1996).  Given that the same legal standards applied in 1992 and 1994, the circumstances in

*Kennedy* are inapposite of the circumstances here, where different legal standards applied before

January 1, 2009, than applied on or after January 1, 2009.  Defendant's misstatement of the

court's decision is a thinly veiled attempt to make the case seem applicable to the instant matter,

when it is not.

  The other cases Defendant cites are similarly inapplicable to Defendant's argument, as

the circumstances are dissimilar to the situation at issue here.  In *Connor v. Reckitt & Coleman,*

*Inc.*, the Eight Circuit addressed claims that all arose in or after September 1992, which, again,

meant that all of the events occurred at a time subject to the same legal standards under the

ADA.  84 F.3d 1100, 1101 (8th Cir. 1996).  As such, just as *Kennedy* is irrelevant to the instant

matter, *Connor* is inapposite as well.  Likewise, in *Martin v. Southwestern V.A. Gas Co.*, the

Fourth Circuit addressed the employer's 1991, pre-ADA decision to discharge the plaintiff and

held that the plaintiff's 1992, post-ADA request for accommodation did not make the claim

regarding the 1991 decision to discharge, which was otherwise untimely, timely.  135 F.3d 307,

310 (4th Cir. 1998).  In *Martin*, the employer decided to terminate the plaintiff *before* the ADA

was effective, but, pursuant to the terms noted in the 1991 decision to discharge, the plaintiff's

termination was not effectuated until 1992.  *Id.*  As such, the plaintiff's post-ADA request for an

accommodation was an attempt to make his discriminatory discharge claim, a discrete act

occurring in 1991, timely.  *Id.*  That is inapposite to the instant matter, as Plaintiff here does not

argue that an otherwise untimely claim is rendered timely by Defendant's 2009 denial.

Moreover, unlike the plaintiff in *Martin*, Plaintiff here does not attempt to apply new legal

standards to events that arose prior to the effective date of those new standards.  Rather, he

simply requests that, as the courts in *Rumbin, Garner,* and *Johnson* did, this Court analyze his claims under the standards outlined in the law that governed at the time the incidents occurred. Defendant cannot point, and has not pointed, to any cases to support its indefensible position.

> **3. Defendant's Claim That All Of Plaintiff's Discrete Claims Of Retaliation And Disability Discrimination Arising On Or After January 2009 Should Be Analyzed Under The ADA's Pre-Amendment Standards Is Unsupported**

Plaintiff has several discrete claims for disability discrimination and retaliation and has pled facts that state such discrete claims. Indeed, Defendant does not contend otherwise. However, without any support or analysis, Defendant implies that these discrete events are part an ongoing violation that relates back to the original request for accommodation in July 2008 and, therefore, should be analyzed under the pre-ADAAA standards. Motion at 13. Defendant does not present any statutes or legal precedent to support this argument. *Id.* Defendant could not put forth such support as improper medical inquiries,[3] discrete acts of retaliation, and other discrete acts of disability discrimination, are not claims of an ongoing violation. Each of the claims state a discrete cause of action that affected a term or condition of employment, and they each should be analyzed under the legal standards that controlled during the relevant timeframe. Aside from its insinuation that because Defendant believes the failure to accommodate claim should be dismissed, the other discrete claims should be dismissed as well, Defendant has presented no argument to support its untenable position. *Id.*

---

[3] Moreover, improper medical inquiries do not require that the employee be an individual with a disability to state a claim. *Koch v. Walter*, 935 F. Supp. 2d 164, 175 (D.D.C. 2013) ("'[The Rehabilitation] Act prohibits employers from inquiring into employees' medical conditions, although an exception is made for "inquiries into the ability of an employee to perform job-related functions.' 42 U.S.C. § 12112(d)(4)(B)"); *Munford v. U.S. Postal Serv.*, EEOC Appeal No. 0120071416 (Mar. 31, 2009) ("The Rehabilitation Act's restrictions on inquiries and examinations apply to all employees, not just those with disabilities."). Accordingly, all demands for medical information and/or examinations, as outlined in the complaint, state a claim under the Rehabilitation Act, ADA, and ADAAAA, regardless of whether they occurred before or after January 1, 2009.

Further, to the extent that the incidents of retaliation occurred prior to January 1, 2009, they also state a claim.  Even assuming Defendant's denial of Plaintiff's 2008 reasonable accommodation request was legal, his request for accommodation still qualified as protected activity; Defendant does not contend otherwise.  As such, all discrete acts of retaliation that occurred in 2008, as well as 2009 and onward, as well all discrete incidents of disability discrimination from January 1, 2009, onward, state a claim.  Accordingly, Plaintiff's discrete claims of disability discrimination and retaliation should not be dismissed, and, as discussed above, those arising on or after January 1, 2009, should be analyzed under the ADAAA's legal standards.

## C.  Plaintiff Has A Disability Within The Meaning Of The ADAAA

Defendant does not dispute that Plaintiff has pled sufficient facts to establish he is an individual with a disability under the ADAAA.  Indeed, Plaintiff has pled facts sufficient to establish that he is an individual with a disability within the meaning of the ADAAA,[4] and Defendant only argues that Plaintiff is not an individual with a disability under the pre-Amendments standards.  Defendant conspicuously does not contest that Plaintiff's claim that he has a disability within the meaning of the ADAAA, and as such, the Plaintiff's disability claims arising from events in or after 2009, including his failure to accommodate claim, cannot be dismissed.[5]

---

[4] Under the ADAAA, major life activities include the operation of "major bodily functions," such as cell growth and functions of the skin.  42 U.S.C. §12102 (2)(B); 29 C.F.R. 1630.2(i)(ii). As Plaintiff pled in his complaint, his medical condition, Pseudofolliculitis barbae, impacts and substantially limits, compared to the general population, his cell growth as well as his the function of his skin. Compl. ¶¶ 37-43.  Defendant does argue that Plaintiff has not sufficiently pled facts establishing he is an individual with a disability based on these standards.

[5] Further, to the extent that any of the claims regarding improper medical inquiries or demands for medical examinations occurred prior to 2009, whether Plaintiff was an individual with a disability is irrelevant for the purposes of stating a claim. *See Koch v. Walter*, 935 F. Supp. 2d 164, 175 (D.D.C. 2013) ("'[The Rehabilitation] Act prohibits employers from inquiring into employees' medical conditions, although an exception is made for "inquiries into the ability of an employee to perform job-related functions.' 42 U.S.C. § 12112(d)(4)(B)"); *Munford v. U.S. Postal Serv.*, EEOC Appeal No. 0120071416 (Mar. 31, 2009).  Accordingly, all demands for medical

### D.  Plaintiff's Claims Under §42 U.S.C. 1983 Are Timely

Defendant next argues that Plaintiff is barred from pursuing his claims under 42 U.S.C. 1983 (Counts 2, 6, 9, 13, 17, and 20) as they are untimely.  Brief at 2, 20-23. Defendant relies on *Wallace v. Kato*, 549 U.S. 384 (2007), *Earle v. District of Columbia*, 707 F.3d 299 (D.C. Cir. 2012) and *Morris v. Carter Global Lee, Inc.*, 2013 WL 5916816 (D.D.C. Nov. 5, 2013) for the proposition that the three-year residual statute of limitations applies to claims brought pursuant to Section 1983.  Brief at 20.  Defendant further argues that the pendency of an administrative action on a Title VII claim does not toll the statute of limitations on a Section 1981 or Section 1983 claim.

Plaintiff is alleging disparate impact on the basis of race and disability.  It is the Plaintiff's position that every time the Defendants applied the discriminatory grooming policy to him, by ordering him to be clean shaven, by repeatedly disciplining him, assigning him to limited duty, initiating his involuntary retirement, and failing to accommodate him, as is outlined in paragraphs 23 through 293, Defendants violated the provisions set out in 42 U.S.C. 1983.

At this stage of the case, the benefit of all reasonable inferences must be construed in favor of the plaintiff and a determination that a discriminatory policy was implemented outside the statutory period does not necessitate a finding that no new violation occurred and no new claims could arise when the Defendants implemented the policy over and over again, with the majority of incidents falling within the three year period preceding the filing of the Initial Complaint.  *See Lewis v. City of Chicago*, 560 U.S. 205, 214 (2010).  According to the Supreme Court's decision in *Lewis*, "If [Plaintiff] could prove that the [Defendants] 'used[d]' the 'practice' that 'causes a disparate impact,' [he] could prevail."  *Id*.  The Court explained that if

---

information and/or examinations, as outlined in the complaint, state a claim under the Rehabilitation Act, ADA, and ADAAAA, regardless of whether they occurred before or after January 1, 2009.

plaintiffs are prevented from bringing disparate impact claims despite ongoing disparate impact, many plaintiffs who are subjected to such disparate impact following the implementation of the discriminatory practice, will have no remedy. *Id.* at 216-17. Thus, the Court should not dismiss Plaintiff's disparate impact claims as untimely with respect to the discriminatory policy, because Plaintiff has met his burden of establishing a prima facie case by alleging that Defendant's policy had a disparate impact on African-Americans, and because that claim is not time barred as a number of discriminatory instances occurred within the timeframe of the three year statute of limitations. *Young v. Covington & Burlington LLP*, 736 F. Supp. 2d 151, 160-61 (Sept. 9, 2010).

Thus, Defendants' assertion that Plaintiff's claim under Section 1983 asserted in Counts 2, 6, 9, 13, 17, and 20 are time barred because the initial instance(s) of violation occurred in 2008 lack merit. This argument has no support in case law. Thus, Counts 6, 9, 13, and 17, should not be dismissed with regard to any instances of discrimination that occurred from September 11, 2010 onward.[6]

### E. Despite Defendant's Arguments To The Contrary, Plaintiff Has Pled Sufficient Facts To Establish Jurisdiction For The Purposes Of Declaratory And Injunctive Relief

The fact that Plaintiff resigned from his position at FEMS does not preclude the Court from granting injunctive or declaratory relief. The Court has previously held a plaintiff was entitled to declaratory and injunctive relief even though the plaintiff would not return to the workplace. In *Lewis v. American Foreign Service Association*, the Court held that even though the plaintiff was not entitled to reinstatement, because the jury found the plaintiff suffered "some retaliation, it is proper to grant the Plaintiff declaratory and injunctive relief as allowed" by the Civil Rights Act of 1991. 846 F. Supp. 77, 82 (D.D.C. 1993). The Court subsequently set forth

---

[6] These events are outlined in the complaint starting in paragraph 253.

the specific declaratory and injunctive relief to which the plaintiff was entitled as previously set forth in the judgment:

> The Judgment accompanying this Memorandum Opinion declares that the Defendant retaliated against the Plaintiff for filing her employment discrimination charge with the EEOC and the D.C. Office of Human Rights, in violation of 42 U.S.C. § 1981. The Judgment goes on to direct the Defendant to refrain from retaliating against any employee who might file a discrimination charge against the Defendant in the future. Finally, the Judgment directs the Defendant to inform its employees, officers, and board members that employees have the right to file such charges without fear of being subjected to retaliation by fellow employees or officials of the Defendant.

*Id.* at 82-83.  This declaratory and injunctive relief was upheld even though the plaintiff would not return to the workplace.

Similarly, in this case, although Plaintiff will not be reinstated to his position with FEMS, he is entitled to declaratory and injunctive relief in the event he is successful in his claims against Defendant.  In the event Plaintiff prevails, the Court may still enter declaratory and injunctive relief similar to that granted in *Lewis*, as specified above.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Partial Motion to Dismiss.  Further, for the reasons stated herein, Plaintiff respectfully withdraws Counts 2-4, 7, 11, and 20, as well as his claims against DCFEMS.

**DATED: April 16, 2014**                    Respectfully Submitted,

/s/ Shannon C. Leary_____
Shannon C. Leary (Bar. No. MD18396)
Attorney for Plaintiff
The Law Offices of Gary M. Gilbert and Associates
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
Telephone: 301-608-0880
Facsimile: 301-608-0881
sleary@ggilbertlaw.com