# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MANU KENNEDY,**

        Plaintiff,

        v.

**HON. VINCENT GRAY, et al.,**

        Defendants.

Case No. 13-cv-01384 (CRC)

## MEMORANDUM OPINION

Plaintiff Manu Kennedy, a former District of Columbia firefighter, refused to comply with a policy requiring firefighters to be clean-shaven so that they can safely wear their respirators. Kennedy has *pseudofolliculitis barbae* ("PFB"), a skin condition that disproportionately affects African-American men and can lead to irritation and infection when shaving one's face closely. His dermatologist recommended he maintain a one-eighth inch beard to prevent irritation, but the fire department did not consider PFB a disability and refused to accommodate it.  Instead, the department assigned Kennedy to conduct fire inspections until he ultimately resigned in May 2013. Kennedy initially alleged 28 counts of disability discrimination, racial discrimination, failure to accommodate, medical privacy violations, and retaliation as a result of the fire department's application of the grooming policy to him, but has since agreed to withdraw several counts. Defendants, the District of Columbia and several of its offices and officials, move to dismiss several parties to the suit, the counts related to Kennedy's disability discrimination and failure to accommodate claims, and his request for declaratory and injunctive relief.  The District does not seek dismissal of Kennedy's remaining race discrimination, retaliation, or medical privacy claims. The counts that remain at issue hinge largely on whether Kennedy had a disability as defined by the Americans with Disabilities Act.  This determination in turn depends on whether the Americans

with Disabilities Amendments Act, which went into effect on January 1, 2009, applies to Kennedy's claims. Because the Court finds that the amendments do not apply here and that PFB does not constitute a disability under the prevailing pre-amendment interpretation of the statute, the Court will grant the partial motion to dismiss.

## I.      Background[1]

### A.  The Fire Department's Shaving Policy

In 2001, the District of Columbia Fire and Emergency Medical Services Department ("FEMS") implemented a grooming policy prohibiting firefighters from having beards. Compl. ¶ 77. The purpose of the policy was to ensure that firefighters' respirators fit properly. Id. ¶ 82. Imperfections in fit between a firefighter's face and the mask of his or her respirator—due to an unshaven face or other factors like scars—can cause clean air to escape the mask rather than circulating inside it, leading to more rapid depletion of the firefighter's air supply. Id. ¶¶ 60, 61–63, 65. After several firefighters challenged the policy under the Religious Freedom Restoration Act ("RFRA"), this court preliminarily enjoined the department from enforcing it against those who refused to comply on religious grounds. Id. ¶ 78. The court ultimately granted summary judgment to the plaintiffs, concluding that "the fire department may not impose a shaving requirement on men who wear their beards for religious reasons." Potter v. District of Columbia, No. 01-cv-1189, 2007 WL 2892685, at *1 (D.D.C. Sept. 28, 2007), aff'd, 558 F.3d 542 (D.C. Cir. 2009). Firefighters who are not claiming a religious exemption, however, still must comply with the grooming requirements.

---

[1]  Because the Court "must take all of the factual allegations in the complaint as true," this overview draws heavily from Kennedy's complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

B.  Kennedy's Employment with the Fire Department

Kennedy worked for FEMS from 2002 through 2013.  Compl. ¶ 23.  The relevant events in

this case began in May 2008, when Kennedy mentioned to a doctor at the fire department clinic that

he had a spot on his face that would not heal due to PFB.  Id. ¶¶ 106–08.  PFB is a skin condition

that causes persistent irritation on a person's face when he shaves because regrowing hairs curl into

the skin instead of growing straight out of the follicle.  Id. ¶¶ 39, 40–43, 45.  According to the

National Institutes of Health and other sources, PFB disproportionately affects African-American

men.  Id. ¶¶ 45–48.  After his clinic appointment, Kennedy's personal dermatologist instructed him

to maintain one-eighth of an inch of facial hair.  Id. ¶¶ 111, 114–17.  Kennedy provided medical

documentation of his diagnosis and treatment to FEMS on July 2, 2008, which prompted a clinic

doctor to place him on limited duty.  Id. ¶ 112.  Kennedy then requested sick leave due to his PFB,

which was denied.  Id. ¶¶ 124–25.  After he reported for duty noncompliant with the shaving policy

on July 10, 2008, FEMS required Kennedy to explain his inability to shave; he indicated that he

believed he was being discriminated against and asked FEMS to accommodate his PFB.  Id. ¶¶ 128-

–31.  A battalion chief notified Kennedy of proposed penalties for non-compliance and his decision

to place Kennedy on administrative leave during the last week of July 2008.  Id. ¶¶ 135–38.  In

response, Kennedy submitted a memorandum explaining his version of events, indicating that he

believed the proposed discipline was discriminatory.  Id. ¶¶ 136–37.  After a clinic doctor told

Kennedy's dermatologist that he was still required to be clean shaven in order to wear a respirator

safely, id. ¶¶ 139–140, Kennedy filed a charge with the Equal Employment Opportunity

Commission ("EEOC") on or around July 31, 2008 alleging discrimination on the bases of race and

disability, id. ¶¶ 7–8.

In August 2008, FEMS officials suspended Kennedy for violating the facial hair policy,

which he appealed.  Id. ¶¶ 141–46, 164.  The same month, Kennedy passed a fit test while

maintaining a beard.  Id. ¶¶ 151–52.  A fit test examines "the seal between a firefighter's face and the respirator mask" in order to "determine whether a firefighter can wear a mask without risk of air leakage."  Id. ¶¶ 83–85.  Kennedy then missed work due to another health issue from October 2008 until January or February 2009, during which time his appeal of his suspensions was denied.  Id. ¶¶ 153–57, 163, 165–67.  After Kennedy returned to the Fire Prevention Division on limited/light duty status, FEMS informed him that he would be subject to the involuntary retirement process.  Id. ¶¶ 172–75, 182.  The clinic recommended that he be considered for disability retirement in September 2009.  Id. ¶¶ 188, 191.  Nine months later, after Kennedy refused to undergo a psychological examination—believing it was discriminatory and retaliatory—FEMS terminated his limited duty status.  Id. ¶¶ 208, 213–21.  In turn, Kennedy was deemed to be ineligible for disability retirement because he had returned to full duty.  Id. ¶ 239.  From June 2010 until September 2010, Kennedy served on full duty status in the department's training academy.  Id. ¶ 32.  FEMS later assigned him to office duty in the Fire Prevention Division from September 2010 through February 2011 and on fire inspection duty from February 2011 until he resigned in May 2013.  Id. ¶¶ 33, 35–36, 284, 286–87.

Kennedy reaffirmed his request to maintain one-eighth of an inch of facial hair and amended his EEOC complaint several times between July 2008 and July 2010, adding actions taken against him for his refusal to comply with the shaving policy and the additional ground of retaliation.  Id. ¶¶ 9–17.  In August 2012, the EEOC issued a determination of the charge, finding reasonable cause to believe that discrimination occurred, and referred the matter to the Department of Justice for

consideration.  Id. ¶ 20.  In June 2013, Kennedy received a Notice of Right to Sue letter from the

Department of Justice.  Id. ¶ 21.  He brought this suit on September 11, 2013.

## II.     Standard of Review

To overcome a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  Facial plausibility entails "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While the

court "must take all of the factual allegations in the complaint as true," legal conclusions "couched

as a factual allegation" do not warrant the same deference.  Ashcroft, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 555).

## III.    Analysis[2]

### A.   Dismissal of Certain Defendants

Defendants move to dismiss Mayor Gray, Chief Ellerbe, and Attorney General Nathan from

the suit.[3]  As Defendants note, the complaint lacks allegations relating directly to their official

conduct.  Defs.' Partial Mot. to Dismiss at 10 (citing Simba v. Fenty, 754 F. Supp. 2d 19, 22

(D.D.C. 2010)).  Thus, the claims against these officials have no independent purpose and are

redundant to the claims against the District of Columbia.  Id.  Kennedy responds that the Court is

not required to dismiss individuals in their official capacities when the city is also a party to the suit.

Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss at 3 (citing Owens v. District of Columbia, 631 F.

---

[2]  Defendants move to dismiss Counts 2, 3, and 20 of Kennedy's suit.  Kennedy agrees to withdraw these claims "for the reasons Defendant states" and the Court will therefore dismiss them and Count 17, which Defendants disputed on the same basis.  Pl.'s Opp'n to Defs.' Part. Mot. to Dismiss at 2.

[3]  Plaintiff agrees to dismiss the D.C. Fire Department as non sui juris.  Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss at 1.

Supp. 2d 48, 54 (D.D.C. 2009) (indicating that dismissal of individuals in their official capacities is not required when the city is also party to the suit)).  Yet he fails to provide any persuasive reasons for the Court to exercise this discretion.  Because dismissing redundant official capacity claims is "'the overwhelming approach that has been taken by members of this Court, as well as the position taken by other courts,'" the Court will dismiss Kennedy's claims against Gray, Ellerbe, and Nathan. Brown v. Corrections Corp. of Am., 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (quoting Price v. District of Columbia, 545 F. Supp. 2d 89, 94 (D.D.C. 2008)); accord Hardy v. District of Columbia, 601 F. Supp. 2d 182, 186-87 (D.D.C. 2009) ("Claims brought against government employees in their official capacity are treated as claims against the employing government and serve no independent purpose when the government is also sued.").

### B.   Whether Plaintiff's PFB Constitutes a Disability Under the ADA

Kennedy's claims under the Americans with Disabilities Act of 1990 ("ADA"), the D.C. Human Rights Act ("DCHRA"), the Civil Rights Act of 1871, and the Rehabilitation Act all turn on whether his PFB meets the ADA's definition of disability.[4]  See Kapche v. Holder, 677 F.3d 454, 460 (D.C. Cir. 2012) ("In assessing [a Rehabilitation Act] claim, the court employs the same standards used to determine liability under the [ADA]"); Hodges v. District of Columbia, 959 F. Supp. 2d 148, 153 (D.D.C. 2013) ("In analyzing the sufficiency of [plaintiff's] DCHRA claims, the

---

[4]  The ADA Amendments Act of 2008 ("ADAAA") does not provide a separate cause of action from the ADA.  Pub. L. No. 110–325, § 2(b)(1) (defining the purpose of the ADAAA as "reinstating a broad scope of protection to be available *under the ADA*," not adding new causes of action) (emphasis added); see also Snider v. U.S. Steel-Fairfield Works Med. Dep't, No. 2:12-cv-03508-AKK, 2013 WL 1278973, at *3 (N.D. Ala. Mar. 26, 2013) ("The ADAAA merely broadens the scope of protection available to plaintiffs under the ADA by redefining particular terms[,] . . . the proper cause of action still exists under the ADA."), aff'd, 591 F. App'x 908 (11th Cir. 2015). Accordingly, Count 5 (disparate impact under the ADAAA); Count 8 (failure to accommodate under the ADAAA); Count 12 (disparate treatment on the basis of disability under the ADAAA); Count 16 (retaliation for protected activity under the ADAAA); and Count 27 (improper medical inquiries and examinations under the ADAAA) will be dismissed as redundant to Kennedy's claims under the ADA.

Court will apply the standards applicable to claims brought under the ADA.") (citing McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 5–6 (D.C. Cir. 2010)); Chang v. Inst. for Pub.-Private P'ships, Inc., 846 A.2d 318, 324 (D.C. 2004)); Compl. ¶¶ 360, 392–93, 429–30, 475–477 (identifying violations of the ADA as the source of Kennedy's claims under the Civil Rights Act of 1871). Consequently, these claims state a claim on which relief can be granted only if PFB is a disability under the ADA.

### i.    Applicability of the ADA Amendments Act of 2008

Whether PFB is a disability turns on the timing of the events at issue. "Before 2008, the Supreme Court had narrowly interpreted what constituted a 'disability.'" Hodges, 959 F. Supp. 2d at 153 (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195–98 (2002); Sutton v. United Air Lines, Inc., 527 U.S. 471, 482–83 (1999)). The Supreme Court strictly interpreted the ADA's "substantially limits" language "to create a demanding standard for qualifying as disabled" that required the impairment to "prevent[] or severely restrict[] the individual" from engaging in a major life activity and be "permanent or long term." Toyota, 534 U.S. at 196–98. In response to this narrow interpretation, Congress passed the ADA Amendments Act of 2008 ("ADAAA"). See Hodges, 959 F. Supp. 2d at 153. The ADAAA "reinstat[ed] a broad scope of protection to be available under the ADA" and "reject[ed] the standards enunciated by the Supreme Court." Pub. L. No. 110–325, § 2(b)(1)–(4). The ADA, as amended, instructs courts to construe the "definition of 'disability' . . . in favor of broad coverage." 42 U.S.C. § 12102(4)(A). New regulations issued pursuant to the ADAAA similarly provide that "[t]he term 'substantially limits' . . . is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Yet, the ADAAA did not become effective until January 1, 2009, and it does not have retroactive effect. Lytes v. D.C. Water & Sewer Auth., 572 F.3d 936, 938–39 (D.C. Cir. 2009). Thus, the standard used in this case depends on the timing of FEMS' alleged unlawful acts. If "the conduct at issue preceded the ADA Amendments Act of

2008, the pre-amendment standards to determine liability govern here." Kapche, 677 F.3d at 460 n.7 (citing Lytes v. D.C. Water & Sewer Auth., 572 F.3d 936, 939–42, (D.C. Cir. 2009)).

Kennedy requested an accommodation for his PFB on July 10, 2008. Compl. ¶¶ 124–31. After the request was denied, he filed a charge of discrimination with the EEOC alleging discrimination on the bases of race and disability on or around July 31, 2008. Id. ¶¶ 7–8. While he continued to ask for accommodations over the next several years, he repeatedly amended his initial EEOC charge with subsequent events as opposed to filing new charges. Id. ¶¶ 9–17. In other words, each of his requests and allegations of discrimination emanated from the July 2008 request and denial.[5] Although the D.C. Circuit has not answered the specific question of when a claim accrues under the 2008 ADA amendments, the Supreme Court has held in the statute of limitations context that "[m]ere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws." Delaware State College v. Ricks, 449 U.S. 250, 261 n.15 (1980); see also Long v. Howard Univ., 512 F. Supp. 2d 1, 17 (D.D.C. 2007) (noting Delaware State College's holding is "well-settled"), aff'd, 550 F.3d 21 (D.C. Cir. 2008); Martin v. Sw. Va. Gas Co., 135 F.3d 307, 310 (4th Cir. 1998) (holding that a claim for disability discrimination "accrues on the date that the alleged unlawful employment practice occurs" and that refusal to reconsider is not a discrete act of discrimination) (citations omitted); Graehling v. Vill. of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.") (citation omitted). As the Seventh Circuit has explained, "[t]he premise of these cases is that the employer took one dispositive act[;] . . . this act may lead to injury in the future, but when there is only one wrongful act the claim accrues with the first injury." Graehling, 58 F.3d 295 at 297 (quotation marks and citation omitted). A plaintiff's subsequent requests of a defendant to

---

[5] Kennedy acknowledges that he "has not made any claim of a continuing violation" and instead argues that FEMS' denial of his renewed requests constitute discrete acts. Pl.'s Opp'n at 7.

reverse its discriminatory decision does not create a new instance of discrimination.  See id.;

Coleman v. Cook Cnty., No. 09 CV 739, 2010 WL 725322, at *5 (N.D. Ill. Feb. 25, 2010) ("Denied

requests for accommodation do not make prior denials of the same request any less discrete or

actionable.") (citing Mendez v. City of Chicago, No. 03–cv-8182, 2004 WL 2980598, at *4 (N.D.

Ill. December 22, 2004) ("[D]enial of a repeat request for previously denied accommodations does

not constitute a new discriminatory act or make the previous denial part of a continuing

violation")).  If they did, it would effectively eliminate any time constraints on such claims, as a

plaintiff could simply make a new request—even if he knew it would be denied—in order to

circumvent the non-retroactivity of the ADA amendments.  See Kennedy v. Chem. Waste Mgmt.,

Inc., 79 F.3d 49, 50–51 (7th Cir. 1996).  Arguments to the contrary have failed in the context of

statutes of limitation under both Title VII and the ADA, and fail for similar reasons here.  Id.

Accordingly, FEMS' allegedly unlawful conduct preceded the effective date of the amended ADA,

and thus the pre-amendment liability standards govern this case.  See Kapche, 677 F.3d at 460 n.7

(citing Lytes, 572 F.3d at 939–42).

> ### ii.    Whether PFB Substantially Limits Kennedy Under the Pre-Amendment ADA

To prevail on a failure to accommodate claim or a disability discrimination claim,[6] a

plaintiff must prove that he had a "disability," which—as relevant here—is defined in the ADA as

"a physical or mental impairment that substantially limits one or more major life activities."  42 §

---

[6]  For a failure to accommodate claim, a plaintiff must demonstrate that "(1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused to make such accommodation."  Hodges, F. Supp. 2d at 153–54 (citing Gordon v. District of Columbia, 480 F.Supp.2d 112, 115 (D.D.C. 2007)).  For a disability discrimination claim, "a plaintiff must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) he was qualified for the position with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."  Id. at 154 (citing Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc)).

12102(1)(A).[7]  The D.C. Circuit has "assumed without deciding that working qualifies" as a major

life activity for the purpose of analyzing ADA cases.  Adams v. Rice, 531 F.3d 936, 945 (D.C. Cir.

2008).  Thus, for Kennedy to prevail, he must show that his PFB "substantially limited" his ability

to work.  Id.  As noted above, the Supreme Court strictly interpreted the pre-amendment ADA's

"substantially limits" language "to create a demanding standard for qualifying as disabled."

Toyota, 534 U.S. at 196–98.  "[T]o be regarded as substantially limited in the major life activity of

working, one must be regarded as precluded from more than a particular job."  Murphy v. United

Parcel Serv., Inc., 527 U.S. 516, 523 (1999).  Specifically, a plaintiff must allege he is "significantly

restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes,"

meaning that one "must be precluded from more than one type of job, a specialized job, or a

particular job of choice."  Sutton, 527 U.S. at 491–92.  In other words, "[i]f jobs utilizing an

individual's skills (but perhaps not his or her unique talents) are available" or "if a host of different

types of jobs are available," an individual is not substantially limited in the major life activity of

working.  Id. at 492.  The EEOC has identified several factors courts should consider in making this

determination, including "the geographical area to which the individual has reasonable access" and

"the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the

---

[7]  Kennedy also argues that FEMS regarded him as an individual with a disability under 42 U.S.C. §
12102(3)(A).  Pl.'s Supplemental Br. at 5.  For a person to be "regarded as" having a disability, his
employer must "mistakenly believe[] that [the] person has a physical impairment that substantially
limits one or more major life activities" or "mistakenly believe[] that an actual, nonlimiting
impairment substantially limits one or more major life activities."  Sutton, 527 U.S. at 489.  This
case, however, centers on FEMS' emphatic insistence that Kennedy was not disabled.  See, e.g.,
Compl. ¶¶ 119–21, 155–59 (repeated allegations that FEMS officials would not place Kennedy on
sick leave for his PFB and insisted that he comply with the clean-shaven policy, even after
receiving medical information for Kennedy's dermatologist).  Although Kennedy was briefly
considered for disability retirement, the Police and Firefighters' Retirement and Relief Board
ultimately determined—prior to a disability retirement hearing—that he was ineligible because he
had returned to full duty.  Id. ¶¶ 225, 239.  Accordingly, the Court concludes that Kennedy has not
alleged sufficient facts to establish that he was "regarded as" having a disability by FEMS.

geographical area, from which the individual is also disqualified." Sutton, 527 U.S. at 491-492

(citing 29 C.F.R. § 1630.2(j)).

Kennedy has not met this burden.  His complaint makes clear that he has been "precluded

from . . . one type of job, a specialized job, or a particular job of choice," not from a "class of jobs."

Id.  Kennedy acknowledges that his PFB did not limit him from serving as a FEMS fire inspector

for over two years.  Compl ¶¶ 35–36, 286–87.  Although he may be not be able to perform his

"particular job of choice" as a FEMS firefighter, Sutton, 527 U.S. at 491–92, he can still serve in

fire prevention jobs generally.[8]  The D.C. Circuit has not addressed the particular issue of whether

firefighting or public safety jobs requiring respirators constitute a "class of jobs" under the pre-

amendment ADA, or whether PFB substantially limits individuals in the public safety field from the

major life activity of working.  Significant pre-amendment authority in other circuits, however,

contradicts Kennedy's position.  See Stewart v. City of Houston Police Dep't, 372 F. App'x 475,

477 (5th Cir. 2010) (holding that African-American police officers who suffer from PFB and allege

discrimination based on a no-beard policy designed to ensure the safety of officers when they wear

respirators are not inhibited from working in a broad class of jobs since other jobs within the police

department are available to them) (citing Sutton, 527 U.S. at 491); Bridges v. City of Bossier, 92

F.3d 329, 336 (5th Cir. 1996) (holding that "firefighting jobs . . . is too narrow a field to describe a

'class of jobs'"); Welsh v. Tulsa, 977 F.2d 1415, 1417 (10th Cir. 1992) (holding that inability to

work as a firefighter does not "substantially limit[] one or more major life activities"); Daley v.

---

[8] Moreover, regardless of whether firefighting is a class of jobs, Kennedy has not pled facts that
could demonstrate that PFB would prevent him from serving as a firefighter in other jurisdictions in
"the geographical area to which the individual has reasonable access."  Id.  If other fire departments
in the District of Columbia area—such as those in Maryland or Virginia—would permit a
firefighter to maintain a one-eighth inch beard, then Kennedy could not be classified as
"significantly restricted in the ability to perform" the "class of jobs" of firefighting.  Id.

Koch, 892 F.2d 212, 215 (2d Cir. 1989) (holding that inability to work in "the particular position of police officer is not a substantial limitation of a major life activity").

Kennedy's argument that firefighter does constitute a class of jobs under the pre-amendment ADA relies heavily on an Eleventh Circuit case in which the city of Atlanta ultimately prevailed when firefighters with PFB challenged the city fire department's grooming policy.  Pl.'s Supplemental Br. at 2 (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993)).  While the court in Fitzpatrick did observe that PFB "substantially limit[s] the firefighters' ability to engage in the 'major life activity' of work on account of the no-beard rule" and thus the "firefighters would seem to qualify as" disabled under the Rehabilitation Act, it made clear that this conclusion is dicta by noting "it is not necessary for [the court] to rule on that issue."  Id. at 1126 (quotation marks omitted).  The court went on explicitly to find that it was unnecessary to rule on the issue of whether the firefighters are disabled because "there exists no reasonable accommodation by which the firefighters with PFB would be able to perform their jobs safely without being clean-shaven."  Id. at 1127.  As a result, the Court finds Fitzpatrick unpersuasive.

## C.  Declaratory and Injunctive Relief

Citing a single case from a fellow court in this district, Lewis v. American Foreign Service Association, 846 F. Supp. 77, 82 (D.D.C. 1993), Kennedy maintains that he is entitled to injunctive or declaratory relief.  Although Kennedy has already resigned from FEMS and does not seek reinstatement, he asks the Court to declare the grooming policy unlawful and enjoin FEMS from enforcing it.  The D.C. Circuit has frequently held that where a plaintiff seeks declaratory and injunctive relief, "past injuries alone are insufficient to establish standing."  Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing Los Angeles v. Lyons, 461 U.S. 95, 105 (1983); O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974)); see also NB v. District of Columbia, 682 F.3d 77, 82 (D.C. Cir. 2012); Arpaio v. Obama, 27 F. Supp. 3d 185, 199–200 (D.D.C. 2014).  The plaintiff instead

"must show he is suffering an ongoing injury or faces an immediate threat of injury." Id.  Because

he has not made that showing, the Court will dismiss Kennedy's claim for injunctive and

declaratory relief.

### IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Partial Motion to Dismiss.  The

Court will issue an order consistent with this opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   March 20, 2015