### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MANU KENNEDY,**<br><br>        Plaintiff,<br><br>        v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>        Defendant. | Case No. 13-cv-01384 (CRC) |

### MEMORANDUM OPINION AND ORDER

The District of Columbia's fire department maintains a policy requiring its firefighters to be clean-shaven so that their respirators will fit properly. Manu Kennedy, a former D.C. firefighter, refused to comply with that policy because he has a skin condition that leads to irritation and infection when he shaves too closely. After the fire department denied his request for an exemption from the shaving policy and disciplined him for his noncompliance, Kennedy filed suit against the District and associated officials and agencies. He alleged 28 counts of disability discrimination, racial discrimination, failure to accommodate, medical-privacy violations, and retaliation, though he later agreed to withdraw several counts. The District moved to dismiss most of Kennedy's claims, particularly those related to his allegations of disability discrimination and failure to accommodate, contending that Kennedy's condition did not qualify as a disability under applicable law. The Court agreed, concluding that Kennedy's claim should be evaluated under the relatively narrow definition of "disability" in place prior to the Americans with Disabilities Act Amendments Act ("ADAAA") because the allegedly discriminatory conduct took place before the new law went into effect and Kennedy's subsequent requests that the fire department reverse its initial decision did not create new instances of discrimination. Mem. Op. 7–9, ECF No. 21.

Kennedy now asks the Court to reconsider its decision, repeating his arguments that the ADAAA definition should govern the Court's analysis.[1] Because he fails to reference any intervening factual or legal developments or show that the Court misapprehended controlling law, the Court will deny his motion to reconsider the merits of its previous decision. Alternatively, Kennedy requests that the Court permit him to pursue an interlocutory appeal in order to clarify a controlling question of law: whether a claim based on an accommodation request renewed after the effective date of the ADAAA, but originally made before that date, should be evaluated based on the new definition of "disability" or the prevailing pre-amendment interpretation of the statute. Because immediate resolution of this question could well conserve significant time and resources, and because Kennedy has identified a substantial ground for difference of opinion on this issue, the Court will permit Kennedy to pursue an appeal of its interlocutory order under 28 U.S.C. § 1292(b).

**I.     Legal Standard**

Under Federal Rule of Civil Procedure 54(b), any order or decision that is not a final judgment "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[2] Courts grant motions for reconsideration of interlocutory orders only "as justice requires." Shea v. Clinton, 850 F. Supp. 2d 153, 157 (D.D.C. 2012) (quoting

---

[1] Kennedy also asks the Court to reconsider its dismissal "without discussion" of his claims under 42 U.S.C. § 1983. Pl.'s Mot. Alter or Amend J. 7. He ignores that each of these counts was withdrawn or turned on whether he had a cognizable "disability," the central topic of the Court's opinion. See Mem. Op. 5 n.2 (noting that Kennedy had agreed to withdraw several claims for the reasons Defendants stated, and that the Court would therefore dismiss Count 17—"which Defendants disputed on the same basis"—as well). Kennedy further requests reinstatement of all counts "that alleged retaliation in violation of the ADA and ADAAA." Pl.'s Mot. Alter or Amend J. 6. Only Counts 15 and 16, respectively, alleged retaliation under the ADA and ADAAA. But the Court did not dismiss Count 15 in its Memorandum Opinion, and it properly dismissed Count 16 as "redundant to Kennedy's claims under the ADA." Mem. Op. 6.

[2] Although Kennedy moves for reconsideration under Rule 59(e), which concerns the alteration and amendment of final judgments, the Court will consider this motion under Rule 54(b) because its previous opinion "adjudicate[d] fewer than all claims" presented. Fed. R. Civ. P. 54(b).

Hoffman v. Dist. of Columbia, 681 F. Supp. 2d 86, 90 (D.D.C. 2010)) (internal quotation marks omitted). While courts enjoy significant discretion under Rule 54(b), "in order to promote finality, predictability and economy of judicial resources," they generally should not revisit prior interlocutory decisions "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Id. at 157–58 (quoting Pueschel v. Nat'l Air Traffic Controllers Ass'n, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)) (internal quotation marks omitted). In deciding whether "justice requires" reversal of its prior interlocutory order, a court considers whether it

> [1] patently misunderstood a party, [2] has made a decision outside the adversarial issues presented to the Court by the parties, [3] has made an error not of reasoning but of apprehension, or [4] whe[ther] a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.

United States v. Slough, 61 F. Supp. 3d 103, 107 (D.D.C. 2014) (quoting Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). A motion for reconsideration should therefore be denied "when it merely asserts 'arguments for reconsideration [that] the court has already rejected on the merits.'" BEG Invs., LLC v. Alberti, 85 F. Supp. 3d 54, 58 (D.D.C. 2015) (alteration in original) (quoting McLaughlin v. Holder, 864 F. Supp. 2d 134, 141 (D.D.C. 2012)).

**II. Analysis**

    A. The Merits of the Court's Decision

The ADAAA did not become effective until January 1, 2009 and does not apply retroactively. See Lytes v. D.C. Water & Sewer Auth., 572 F.3d 936, 939–42 (D.C. Cir. 2009). Thus, if "the conduct at issue preceded the [ADAAA], the pre-amendment standards to determine liability govern." Kapche v. Holder, 677 F.3d 454, 460 n.7 (D.C. Cir. 2012) (citing Lytes, 572 F.3d at 939–42). Kennedy requested an accommodation for his condition on July 10, 2008 and, on July 31, 2008, filed a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC") alleging discrimination on the basis of race and disability. Compl. ¶¶ 7–8, 124–31. Both of those events obviously predated the effective date of the ADAAA. However, Kennedy continued to request an accommodation for his skin condition over the next few years, and he regularly amended his initial EEOC charge to reflect these renewed requests. Id. ¶¶ 9–17. Kennedy has described his additional requests as applications to reconsider a previous adverse decision. See id. ¶ 178 ("[O]n or around March 17, 2009, Mr. Kennedy reiterated his request for accommodation for his PFB."); id. ¶ 192 ("On or around October 8, 2009, Mr. Kennedy restated his request for a reasonable accommodation of being permitted to maintain 1/8 of an inch of facial hair."); Pl.'s Reply Supp. Mot. Alter or Amend J. 1 (claiming that Kennedy "renewed his request for reasonable accommodation for his disability" following the ADAAA's passage).

Kennedy argued that because these renewals and amendments took place after January 2009, his claim should be evaluated under the ADAAA's more expansive definition of "disability." The Court disagreed. Acknowledging that "the D.C. Circuit has not answered the specific question of when a claim accrues under the 2008 ADA amendments," the Court reasoned based on Supreme Court precedent in the statute-of-limitations context and case law from other circuits that a "plaintiff's subsequent requests of a defendant to reverse its discriminatory decision do[] not create a new instance of discrimination." Mem. Op. 8–9. The Court noted that "[i]f they did, it would effectively eliminate any time constraints on such claims, as a plaintiff could simply make a new request—even if he knew it would be denied—in order to circumvent the non-retroactivity of the ADA amendments." Id. at 9.

Kennedy now argues that the Court erroneously relied on the "premise that [he] was required to file a new charge of discrimination under the ADAAA to properly raise [his] claim under the Act." Pl.'s Mot. Alter Amend J. 2. Not so. As the Court stated, its decision was based on the proposition that a plaintiff cannot circumvent time constraints—whether a statute of

4

limitations or the effective date of new legislation—by requesting reconsideration of the denial of an earlier request. This principle would apply regardless of whether Kennedy had done so by amending his initial EEOC charge or filing an entirely new charge based on the same events. Accordingly, Kennedy may not raise new arguments in a motion for reconsideration merely because he "had no opportunity to refute" a conclusion that the Court did not reach. Pl.'s Reply Supp. Mot. Alter or Amend J. 2.

Kennedy also fails to identify any intervening factual or legal developments demonstrating that the Court's holding "was clearly erroneous and would work a manifest injustice." Shea, 850 F. Supp. 2d at 157–58 (quoting Pueschel, 606 F. Supp. 2d at 85) (internal quotation marks omitted). He now invokes—for the first time—an EEOC regulation that he contends requires his post–January 1, 2009 complaints to be analyzed under the ADAAA. Kennedy notes that because the EEOC is charged with administering the ADA, its reasonable interpretation of statutory ambiguity must be accorded deference under Chevron USA, Inc. v. Nat'l Res. Def. Council, 467 U.S. 837 (1984). Pl.'s Mot. Alter or Amend J. 3. This regulation permits EEOC complainants to amend their charges to "clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). Moreover, "[s]uch amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." Id. A motion for reconsideration is emphatically not the proper place to raise new legal arguments. Even were that not the case, § 1601.12(b) would not support Kennedy's position. If the amendments to Kennedy's EEOC charge "relate[d] back to the date the charge was first received"—on or around July 31, 2008—they would be governed by the more limited definition of "disability" in place before the ADAAA took effect on January 1, 2009.

Kennedy also cites an online EEOC guidance document ("the Guidance Document") relevant to the issue of which statutory definition of "disability" applies where a pre-ADAAA request was renewed after the ADAAA took effect. According to this document, "the ADAAA would apply to denials of reasonable accommodation where a request was made (*or an earlier request was renewed*) or to other alleged discriminatory acts that occurred after January 1, 2009." EEOC, Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008, http://www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm (last visited Nov. 13, 2015) (emphasis added). But Kennedy has already raised this argument, see Pl.'s Opp'n Defs.' Mot. Dismiss 7, ECF No. 15, and the Court declined to accept this interpretation for the reasons given in its earlier Memorandum Opinion. Kennedy essentially maintains that the Court committed an "error . . . of reasoning" with respect to the weight to be given to an agency's guidance document in light of countervailing interpretive clues. Slough, 61 F. Supp. 3d at 107. This is not enough to justify reconsideration of the Court's interlocutory order. For "where litigants have once battled for the court's decision," they should not be permitted, "without good reason[,] . . . to battle for it again." Casey v. Ward, 67 F. Supp. 3d 54, 57 (D.D.C. 2015) (quoting Singh, 67 F. Supp. 3d at 101). The Court will therefore deny Kennedy's motion to reconsider the merits of its Memorandum Opinion.

### B. Interlocutory Appeal

Kennedy also requests that the Court allow him to pursue an interlocutory appeal of its previous decision in order to clarify a controlling question of law that the D.C. Circuit has not yet answered: whether a claim based on a request renewed after the effective date of the ADAAA, but originally made before that date, should be evaluated based on the new definition of "disability" or the prevailing pre-amendment interpretation of the statute. The Court may permit a party to pursue an interlocutory appeal if, in its discretion, it determines that a non-final order "[1] involves a

6

controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The party seeking interlocutory review has the burden of persuading the Court that the 'circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003) (quoting In re Vitamins Antitrust Litig., No. 99–197, 2000 WL 33142129, at *1 (D.D.C. Nov. 22, 2000)). Interlocutory appeals are "infrequently allowed," for the movant must demonstrate "exceptional circumstances" justifying piecemeal appeal. Graham v. Mukasey, 608 F. Supp. 2d 56, 57 (D.D.C. 2009).

Here, Kennedy correctly notes that an eventual reversal of the Court's decision on this question after the parties fully litigate the remaining counts would likely require reopening discovery on the issues of disability and reasonable accommodation, resulting in significant but avoidable costs and delays. See Howard v. Office of Chief Admin. Officer of U.S. House of Reps., 840 F. Supp. 2d 52, 57 (D.D.C. 2012) (concluding that § 1292(b)'s "material advancement" prong was satisfied where, if the Court's judgment were reversed, "the parties would be required to undertake another round of discovery, more dispositive motions, and potentially another trial"). Yet it is also true that "[a]ny appeal will almost certainly prolong . . . the resolution of the litigation." Arias v. DynCorp, 856 F. Supp. 2d 46, 54 (D.D.C. 2012). For this reason, § 1292(b) requires more than a theory of how reversal of a final judgment on appeal might ultimately waste the parties' and the Court's resources. It also requires a showing that the decision below might well be reversed on appeal, as evidenced by "substantial ground for difference of opinion" on the disputed legal question. 28 U.S.C. § 1292(b).

Although the issue is a close one, the Court finds that Kennedy has made such a showing. The Court's decision on the ADAAA's applicability in these circumstances "is one of first

impression" in this Circuit, and "there may be a substantial difference of opinion among judges whether it is correct." Mwani v. Bin Laden, 947 F. Supp. 2d 1, 5 (D.D.C. 2013). Indeed, Kennedy has identified a District of Connecticut opinion concluding (though without lengthy discussion) that post-ADAAA requests to reconsider a pre-ADAAA denial of accommodations should be governed by the amended definition of "disability." See Rumbin v. Ass'n of Am. Med. Colls., 803 F. Supp. 2d 83, 92 & n.4 (D. Conn. 2011) (noting that the plaintiff "ha[d] continued to seek reconsideration" of denials that occurred before 2009, and stating that "[t]he ADAAA does, however, apply to [the plaintiff's] claim that he continues to be denied accommodations *after* January 1, 2009"). That decision is consistent with the EEOC's Guidance Document purporting to clarify the ADAAA's legal impact. The Guidance Document is not entitled to controlling deference under Chevron, but agency interpretations "not controlling upon the courts by reason of their authority" may still be credited insofar as a court deems them persuasive. Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). The Guidance Document therefore furnishes an additional basis for disagreement with the Court's Memorandum Opinion.[3] The EEOC evidently adhered to that document in its Determination of June 15, 2012, which found that Kennedy's case satisfied "all requirements for coverage" under the ADA. Pl.'s Mot. Alter or Amend J. Ex. A, at 3. Because the Court concludes that Kennedy has demonstrated "substantial ground for difference of opinion" regarding the Court's holding that his complaints are not governed by the ADAAA, the Court will grant his request to certify the issue for immediate appeal under § 1292(b).

---

[3] An interpretation's Skidmore weight depends in part on "the thoroughness evident in its consideration" and "its consistency with earlier and later pronouncements." Skidmore, 323 U.S. at 140. To be sure, the Guidance Document's position that renewals of pre-2009 requests should be analyzed under the ADAAA is presented as a one-sentence legal conclusion, and it is difficult to square with the EEOC's regulation—one likely entitled to Chevron deference—providing that amendments to an EEOC charge "relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). Still, the fact that the EEOC and another federal district court have resolved this issue differently gives the Court some pause.

**III.     Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion to Alter or Amend Judgement [ECF No. 26], which the Court treats as a motion for reconsideration, is **DENIED**. The Court nonetheless observes that the issue of whether the ADAAA's definition of "disability" applies to Kennedy's complaints "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court therefore certifies this issue for immediate appeal. It is further

**ORDERED** that further proceedings in this case be stayed until the U.S. Court of Appeals for the District of Columbia Circuit has ruled on this matter.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:     November 16, 2015